In re MARRIAGE OF Gregory
L. JULIAN and Deborah A.
Julian.

Gregory L. JULIAN, Petitioner/Appellant,

v.

Deborah A. JULIAN,
Respondent/Respondent.

No. 62951.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 11, 1994.

Theresa Counts Burke, Richard H. Ulrich, Summers, Compton, Wells, Hamburg, St. Louis, for petitioner, appellant.

Bert L. Gates, Kuelker, Oates, Schaumann, St. Louis, for respondent, respondent.

CRANE, Presiding Judge.

Husband appeals from a decree of dissolution of marriage. He challenges the trial court's award of child support and college education expenses and the division of marital property. We modify the amount of child support and affirm as modified.

Gregory L. Julian [husband] and Deborah A. Julian [wife] were married on December 28, 1982. Two children were born of the marriage, who were minors at the time of trial. Husband filed a petition for dissolution of marriage on May 21, 1991.

The trial court entered the dissolution decree on September 17, 1992. The court ordered that the parties have joint legal custody and adopted the parties' "Amended Joint Custody Plan." The plan awarded husband physical custody of the children one week each month during the school year and reasonable temporary custody and visitation on holidays and summer vacations in accordance with a detailed schedule. Wife was awarded physical custody at all other times.

The court calculated child support according to the support guidelines, imputed husband's annual income at $30,000, and ordered husband to pay wife $785.00 per month for child support. The court further ordered husband to pay one-half of each child's annual college or post-secondary school costs.

The court explicitly set out its intent to divide the marital property equally. The court awarded each party one automobile and 50% of the escrowed funds from the sale of the family home. The court awarded wife her two pension plans and awarded husband stock the parties owned in a company he managed.

Husband appeals. He asserts the trial court erred in imputing income to him, in adding his own day care expenses to the child support calculations, in awarding wife

her pension plans, and in dividing the escrowed funds in which he claimed his father had an interest. We agree that the trial court erred in including husband's day care expenses in the child support calculations. We accordingly modify the child support award and affirm the decree as so modified.

■ On appeal we must affirm the decree of dissolution if it is supported by substantial evidence, is not against the weight of evidence and neither erroneously declares nor applies the law. *In re Marriage of Clark*, 801 S.W.2d 496, 498 (Mo.App.1990). We accept as true the evidence and inferences therefrom that are favorable to the trial court's decree and disregard all contrary evidence. *Stein v. Stein*, 789 S.W.2d 87, 92 (Mo.App.1990). We defer to the trial court's assessment on the credibility of witnesses. *Rapp v. Rapp*, 789 S.W.2d 148, 150 (Mo.App. 1990).

## I.

### Child Support

■ For his first point husband contends the trial court erred in awarding $785.00 a month in child support because (1) the trial court imputed a level of income to him which was not supported by the evidence, and (2) the court incorrectly calculated day care costs.[1] We find the trial court's imputation of $30,000 annual income to husband was supported by substantial evidence, but that the trial court erred in adding husband's day care expenses to wife's day care expenses on Form 14.

*Imputation of Income*

■ Husband contends that the evidence did not support imputing $30,000 annual income to him. The court stated it imputed the amount of husband's income from amounts supplied from the years 1988, 1989, 1990 and 1991.

■ In calculating child support, a trial court may properly impute income to a par-

ent by considering past, present and anticipated future earning capacity. *In re Marriage of Garrison*, 846 S.W.2d 771, 775–776 (Mo.App.1993). *See also Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App.1987). A parent may not escape responsibility by voluntarily declining to work, by deliberately limiting work to reduce income, or by otherwise disabling himself financially. *Garrison*, 846 S.W.2d at 775. A court may, in proper circumstances, impute an income to a parent according to what that parent could have earned by using the parent's best efforts to gain employment suitable to the parent's capabilities. *Id.* at 775–776.

■ Form 14, Directions For Use, provides for imputing potential income to an unemployed or underemployed parent. To determine potential income, the court may consider employment potential and probable earnings level, based on the parent's recent work history, occupational qualifications, and prevailing job opportunities in the community. *Id.*

Husband has a bachelor of science from the University of Missouri at Rolla and a master's degree in industrial psychology from the University of Missouri St. Louis. Husband described himself as an entrepreneur. At the time of trial, he was employed by Second Story, Ltd., a corporation owned by his father which manages other companies. He testified he was an authorized officer with control over the corporate funds, the right to sign checks, and the right to borrow money. The corporation was managing two companies, Gian Pietro Maffie, Ltd. and Brake Stop, Inc., although at one time the corporation had managed 16 companies. Husband testified his wages from Second Story as reflected on his W–2 forms and/or income tax returns, were as follows:

1988—$45,000

1989—$42,250

1990—$12,000

1991—$15,227

---

1. Husband also contends in the argument under this point that the child support order was erroneous because it did not take into consideration the substantial amount of time he was given physical custody of the children. However, husband has failed to properly preserve this issue for review as it is not stated in his point relied on, and thus fails to comply with Rule 84.04(d). *See Thummel v. King*, 570 S.W.2d 679, 684–687 (Mo. banc 1978).

Husband argues that his only income consisted of the wages received from Second Story, that the amounts in 1988 and 1989 were only temporary increases which would not be repeated, and that he had not voluntarily reduced his income. We find there was substantial evidence from which the trial court could have found that husband was receiving more income than his Second Story W–2 income, that he voluntarily reduced his W–2 income in contemplation of divorce, and that he had not sought better paying employment because he anticipated his current employment would provide a higher level of income.

Husband rests his argument on the erroneous assumption that the trial court could only consider his Second Story wage income. Form 14, Directions For Use, provides that a party's gross income includes the following:

> Gross income includes income from any source, except as excluded below, and includes but is not limited to income from salaries, wages, overtime compensation, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order.

> For income from rent, royalties, self-employment, proprietorship of a business, or joint ownership of a partnership or closely held corporation, gross income is defined as gross receipts minus ordinary and necessary expenses required to produce income. The court may exclude from ordinary and necessary expenses amounts for depreciation expenses, investments tax credits, and other noncash reductions of gross receipts. Income, expenses and retained earnings should be reviewed to determine gross income.

In this case there was evidence husband received rental income and management services income in addition to his Second Story wages. In the years 1988–1990, this additional income, as reflected on his income tax returns, was as follows:[2]

|      | Partnership & Royalties | Management Services Income | Rental Income | Non–Passive Income |
|------|-------------------------|----------------------------|---------------|--------------------|
| 1988 | $ –                     | $2,272                     | $ –           | $3,836             |
| 1989 | $ –                     | $2,100                     | $5,810        | $4,306             |
| 1990 | $3,475                  | $2,353                     | $8,904        | $9,453             |

Although husband offered evidence of losses, many of those losses were noncash reductions of gross receipts, and may not be deducted from gross receipts to determine husband's income for purposes of child support.

Further, there were substantial unexplained deposits in husband's personal bank account in 1990, the year his W–2 income dropped. Total cash deposits in husband's personal bank account in 1990 were $77,000. Fifty thousand of this was attributed to husband's wage and other income, as set out above, plus identifiable loan repayments and identifiable reimbursement expenses. Husband was unable to explain the remaining $27,000 in deposits in 1990 except to say, "There's other items that wash back and forth with reimbursements and the kind."

Further, there was evidence from which the court could find that husband anticipated his income would return to higher levels. In the three months before trial, husband did not send out any resumes. Since 1990 he had only interviewed with two employment agencies. He testified he was not seeking better paying employment because he anticipated his present job would provide him with greater income.

2. Husband's 1991 income tax returns had not yet been prepared at the time of trial.

Q (by Ms. Fox) Isn't it true that you really are not attempting to find a job at this time?

A I have a job at this time.

Q A job that would pay you income to which you are accustomed? Isn't it true that you haven't attempted to find another position that would provide you with sufficient income to which you have become accustomed?

A I'm planning on my current job doing that.

Q So, you don't anticipate the $12,000— remaining at $12,000 salary?

A That's correct.

From this testimony the court could conclude that husband's present wages were only temporarily reduced.

Furthermore, there was evidence that husband's responsibilities at Second Story allowed him to control the amount paid to himself as wages. Husband testified he first contemplated divorce in March, 1989, which was the last year of his higher W–2 income. The trial court could have found that by virtue of his control over the corporation which employed him, husband thereafter voluntarily reduced his W–2 income in contemplation of divorce.

The trial court's imputation of $30,000 income to husband is supported by substantial evidence. The portion of husband's first point challenging the imputation of income is denied.

*Day Care Costs*

■ In his first point, husband also contends the trial court erroneously used $542.00 instead of $400.00 as day care costs on Form 14. The trial court entered the amount of $542.00 as day care costs on Line 4(b). This figure represents a combination of husband's monthly day care costs of $142.00 and wife's monthly day care costs of $400.00. Form 14 specifically provides that only the *custodial* parent's reasonable work-related child care costs should be entered on Line 4(b). The court treated wife as custodial parent on Form 14.

This court may enter the judgment that the trial court should have entered. Rule 84.14. By entering $400.00 as the amount of

wife's child care costs on Form 14, husband's child support payment is reduced to $708.00 per month. The judgment is so modified.

## II.

### College Expenses

■ For his second point, husband alleges the trial court erred in ordering husband to pay one-half of the college expenses for each child without also ordering wife to pay one-half of those expenses. Husband acknowledges there is no authority to support his contention, and admits that the trial court's order is consistent with that approved in *Echele v. Echele*, 782 S.W.2d 430, 437 (Mo.App.1989). He argues that fairness dictates that both parents be ordered to pay college costs.

■ Parental support obligations continue while the child is in college. Section 452.340.5 RSMo Supp.1991. Thus, as a custodial parent, wife would remain implicitly responsible for expenses not covered by husband. *Echele*, 782 S.W.2d at 438. Point two is denied.

## III.

### Division of Marital Property

■ For his third point husband contends that the trial court unequally divided the marital property when it awarded wife the entire interest in her two pension plans. Husband argues that 85% of wife's Ozark Airlines pension plan and 100% of her TWA pension plan were marital property and should have been evenly divided between the parties to effect the equal division the trial court said it intended to make.

The trial court divided those items of marital property having a known value into equal shares. Of the marital property with unknown value, the court awarded wife the two pension plans and husband the stock in a company he managed.

■ Husband's argument rests on his contention that, because the stock awarded to him was worthless, the property was not divided equally. The parties bear an equal

burden to present evidence as to the value of marital property. *Baker v. Baker*, 804 S.W.2d 763, 765 (Mo.App.1990). Husband did not offer any evidence as to the present value of the pension plans. Without such evidence we cannot find the trial court made an unequal division of marital property in awarding those assets to wife and the stock to husband. Point three is denied.

## IV.

### Marital Home

For his final point, husband asserts the trial court erred in dividing the escrowed funds from the sale of the marital home between the parties. He contends the trial court could not act with respect to those funds because husband's father had an ownership interest in the escrowed funds and was not a party to the dissolution proceeding. The court gave each party 50% of the escrowed proceeds, $2670.60 each, which was the balance remaining from the sale of the house after deducting real estate taxes, the real estate commission, and two mortgages in the amounts of $114,000 and $3,200. Husband contends there is a third mortgage on the property for $30,000 in favor of husband's father.

Husband is precluded from raising the rights of third persons who are not parties to this proceeding. *Binkley v. Binkley*, 725 S.W.2d 910, 912 (Mo.App.1987). Husband's father is still free to pursue any claims that he has against husband and wife. *Id.* Point four is denied.

Paragraph 13 of the Order of the trial court is modified to provide that husband pay wife the sum of seven hundred and eight dollars ($708.00) per month as and for the support of the minor children. As so modified the judgment is affirmed.

KAROHL and CRAHAN, JJ., concur.