Travis J. TARANTO, Respondent,

v.

STATE of Missouri DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, and Elizabeth E. Hamilton, Appellants.

No. WD 53986.

Missouri Court of Appeals, Western District.

Feb. 17, 1998.

Lera L. Shemwell, Jefferson City, for appellants.

Abe Shafer, Quint Shafer, Weston, for respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

The Missouri Department of Social Services, Division of Child Support Enforcement ("the Division") appeals from a judgment issued by the Circuit Court of Platte County reversing an Administrative Hearing Officer's determination that annuity payments which Travis J. Taranto received under a personal injury settlement should be included in his gross income when determining his child support obligation. Mr. Taranto claims that because the personal injury settlement money is not considered in gross income for purposes of determining federal tax liability, it should not be considered as a part of gross income for the purpose of determining his child support obligation. Because we find that Missouri's definition of gross income is broader than that used by the federal government in determining income tax obligations, and that it specifically includes annuities, we hold that it was properly included in income. The Hearing Officer had the authority to consider whether the resulting amount of child support was unjust and inappropriate in light of such factors as whether Mr. Taranto needed to use some of this money for medical expenses related to his personal injury, however, and we remand for that purpose.

The Division also claims that the Hearing Officer properly ordered Mr. Taranto to maintain health insurance coverage for his daughter. We find that there was insufficient evidence in the record on which the Hearing Officer could order Mr. Taranto to provide health insurance coverage, and on remand the agency must consider whether coverage was available to Mr. Taranto, its cost, and whether it offers reasonable benefits in light of the fact that the child's mother's employer is already providing such coverage at no cost.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Abigail Marie Hamilton was born on January 15, 1994, to unmarried parents Elizabeth E. Hamilton and Travis J. Taranto. Mr. Taranto formally acknowledged his paternity of Abigail by signing an affidavit to have his name added to Abigail's birth record on Jan-

uary 18, 1994. Abigail is currently in Ms. Hamilton's custody.

On April 24, 1995, the Division of Child Support Enforcement sent Mr. Taranto a Notice of Finding of Financial Responsibility. This notice alleged that Mr. Taranto should pay child support for Abigail in the amount of $284 per month, that he should enroll Abigail in a health care plan if available through an employer, union, or group affiliation, and that he should be responsible for 44% of Abigail's uncovered medical expenses. Mr. Taranto requested an administrative hearing, as permitted by Section 454.475,[1] which was held on September 19, 1995.

At the hearing, Mr. Taranto testified that he earns $7.50 per hour working a forty-hour week at Sam's Town Casino. This corresponds to $1,300 per month. He also testified that he receives $10,000 per year as part of a settlement from an injury he received as a child. This corresponds to approximately $833.33 per month. He began receiving these annual payments when he turned eighteen, and he will receive them until he turns twenty-one. After that time, Mr. Taranto will receive "additional sums of money" from the settlement. Ms. Hamilton testified that she earns $6.65 per hour working at least thirty-seven and one-half hours each week at Hen House grocery store. This corresponds to approximately $1,080.63 per month. Ms. Hamilton stated that she sometimes works longer weekly hours when requested. She also testified that Abigail is covered by Blue Cross– Shield medical insurance through her employer at no cost.

On October 23, 1995, the Administrative Hearing Officer issued Findings of Fact and Conclusions of Law. When determining Mr. Taranto's gross monthly income, the Hearing Officer included Mr. Taranto's annual personal injury settlement annuity payments of $10,000 per year. He therefore found Mr. Taranto's monthly income to be $2,133.33. He found Ms. Hamilton's monthly income to be $1,109.44. Based on these amounts, the Hearing Officer ordered Mr. Taranto to pay child support of $361 per month. The Hearing Officer also ordered Mr. Taranto to "name and maintain the minor child as a

covered dependent on any health insurance policy available on a group basis, or through [Mr. Taranto's] employer or union."

## II. REVIEW OF AGENCY DECISION IN TRIAL COURT AND IN THIS COURT

Mr. Taranto filed a Petition for Review in the Circuit Court of Platte County as permitted by Section 454.475. Section 454.475.5 states that this review is to be had under the provisions of Section 536.100 to Section 536.140. Under those provisions, the court determines whether the agency's action was in violation of the constitution, in excess of the agency's jurisdiction or statutory authority, not supported by competent and substantial evidence, unauthorized by law, made upon unlawful procedure without a fair trial, arbitrary, capricious, or unreasonable, or an abuse of discretion. § 536.140.2

On January 15, 1997, the circuit court issued a judgment, finding that the Hearing Officer had incorrectly included Mr. Taranto's personal injury settlement in his income. Instead, the judge found Mr. Taranto's monthly income was $1,300 and ordered him to pay monthly child support of $238. The judge also ordered Mr. Taranto to "name and maintain the minor child, Abigail Marie Hamilton, as a covered dependent on any health insurance policy available on a group basis, or through his employment or union, which is provided at no cost to [him]." This appeal followed.

 On appeal from a circuit court judgment reviewing the determination of an administrative agency, we review the decision of the agency, not the judgment of the circuit court. *Cole v. Department of Social Services, Div. of Child Support Enforcement,* 896 S.W.2d 71, 73 (Mo.App.1995). We determine whether the agency action was supported by competent and substantial evidence, was arbitrary, capricious, or unreasonable, or was an abuse of discretion. § 536.140.2; *Cole,* 896 S.W.2d at 73. When the action being reviewed, however, does not involve the agency's discretion, but instead involves only application of the law to the facts, "the court may weigh the evidence for

1. Unless otherwise indicated, all statutory references are to RSMo 1994.

itself and determine the facts accordingly."
§ 536.140.3.

### III. PERSONAL INJURY SETTLEMENT AS INCOME

■ As its first point on appeal, the Division claims that the Administrative Hearing Officer properly included Mr. Taranto's personal injury settlement in his monthly income.

■ To determine the amount of child support due, a court or administrative agency must consider all relevant factors, including the financial resources of the parents. Rule 88.01(b); § 452.340.1(2). In paternity actions, as in all other cases, child support is to be determined pursuant to Form 14. *State, Div. of Family Services v. Williams*, 861 S.W.2d 592, 595 (Mo.App.1993). The Form 14 calculation for presumed child support begins with the gross monthly income for each parent. All resources, not just wages and salary, are included in gross income. Thus, the Directions for Completion of Form 14 state:

> ***Gross income includes income from any source***, except as excluded below,[2] and ***includes but is not limited to income from*** salaries, wages, overtime compensation, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, ***annuities***, capital gains, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, and spousal support actually received from a person not a party to that order.

(emphasis added).

All of the sources listed in Form 14 must be included in gross income. *See, e.g., Jung v. Jung*, 886 S.W.2d 737 (Mo.App.1994); *Sturgeon v. Sturgeon*, 849 S.W.2d 171 (Mo. App.1993); *Barber v. Barber*, 748 S.W.2d 679 (Mo.App.1988). Annuities are expressly listed in Form 14. The personal injury settlement payments are made in the form of an annuity. While no case has directly addressed this issue, it seems evident that

Form 14 requires us to include Mr. Taranto's personal injury settlement payments in his gross income for purposes of figuring his child support obligations under Form 14.

Our result is consistent with the determination in *Loetel v. Loetel*, 706 S.W.2d 235 (Mo.App.1986), that a child's personal injury settlement should be considered when determining a parent's child support obligation. Mrs. Loetel had settled a medical malpractice claim on behalf of herself and her daughter, resulting in the daughter receiving $2,000 per month. Based on this settlement, the trial court reduced the father's child support obligation. On appeal, this Court affirmed, noting that Section 452.340, RSMo 1978, required the court to consider the financial resources of the child. That language did "not limit the subjects which the court may consider." *Id.* at 236. Because the daughter received funds from the settlement which were not restricted in their use, these funds were available for her support and were properly considered in reducing the father's child support obligation. *Id.* at 237.

Similarly, Rule 88.01 requires the Division to consider the financial resources of the parents. Just as a personal injury settlement qualifies as a financial resource of the child, so it makes sense that a personal injury settlement of the parent should qualify as a financial resource of the parent. It is perhaps in part for this reason that annuities are included in the definition of "gross income" in Form 14.

Other states which have statutes which broadly define the term "gross income" for purposes of determining child support obligations have similarly ruled that personal injury settlements constitute income for the purposes of determining a parent's child support obligation. *See, e.g., Mower County Human Services v. Hueman*, 543 N.W.2d 682 (Minn.App.1996); *Sherburne County Social Services v. Riedle*, 481 N.W.2d 111 (Minn.App.1992); *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985); *Cleveland v. Cleveland*, 249 N.J.Super. 96, 592 A.2d 20 (App.Div.1991); *In re Marriage of*

---

**2.** The exclusions are not relevant here and include mostly public assistance benefits such as aid to families with dependent children, Medicaid, and supplemental security income benefits.

*Fain,* 794 P.2d 1086 (Colo.App.1990).[3] For example, the statute at issue in *Sherburne,* like Form 14, expressly defined income to include payments from an annuity. The court concluded that this referred to any annuity regardless of its source, including an annuity contract received as a part of a personal injury settlement. 481 N.W.2d at 112. Similarly, in *Fain,* a statute broadly defined "income" as "income from any source." Based on this definition, the court held that "income" included money received from a structured personal injury settlement. 794 P.2d at 1087.

Mr. Taranto argues that we should not follow these cases, and should instead find persuasive the definition of "gross income" used by the United States Internal Revenue Code. He states that the Code excludes such annuity payments from gross income if they are received in settlement of a personal injury action.

Other courts have directly addressed and rejected similar arguments. For instance, *Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346 (1996), held that the tax laws "contain many preferences and definitions for fiscal and other purposes which have no relationship to support." *Id.* 686 A.2d at 1348–49. Because of the very different purposes of the two types of laws, *Darby* held that definitions of "gross income" for tax purposes were not "persuasive with respect to classifying money for support purposes." *Id.*

Similarly, *Fain* held that the Colorado support statute mandated that "the more specific definition of 'gross income' in [the support statute] prevails over other definitions for federal and state income tax purposes." 794 P.2d at 1087.

Moreover, while no Missouri case has directly addressed this argument in the context of personal injury settlements, in *Buckner v. Jordan,* 952 S.W.2d 710 (Mo. banc 1997), the Missouri Supreme Court recently rejected a similar argument that "per diem" payments from an employer should not be included in gross income. It did so despite the fact that the record indicated that the payments are

excluded from income for federal tax purposes. The father in *Buckner* was a truck driver. He was not paid a fixed amount each month, but rather earned 14.5 to 15.5 cents for each mile he drove. From this money he had to pay his on-the-road expenses for hotels, telephone, showers, meals, and so forth. Rather than reimbursing the driver for these amounts, the employer would simply deduct a "per diem" allowance of $32 per day from the driver's taxable income. This had the same effect, for tax purposes, as if the father had not earned this $32 per day. However, the trial court held that the full amount of the driver's income had to be included on Form 14 for purposes of determining child support obligations, without reducing that income by the amount of the per diem deducted for income tax purposes.

The father argued that this was unfair, because to the extent that the per diem payments just reimbursed him for actual expenses, they did not constitute available income. The Missouri Supreme Court rejected this argument, and held that the full amount of the father's employment-related benefits, including the per diem payments, were properly included in gross income. *Id.* at 712.

■ Like the courts in *Buckner, Darby,* and *Fain,* we hold that the fact that personal injury settlement payments are not included in gross income for income tax purposes is not determinative of whether they are included within the definition of gross income for purposes of determining child support. Form 14 requires their inclusion. It is the more specific direction, and the purposes it serves are different than the purposes served by the tax laws. Accordingly, we hold that the agency properly included Mr. Taranto's personal injury settlement annuity payments in its Form 14 calculations.

■ Our ruling should not be taken to be a determination that it is irrelevant that these payments are for purposes of a personal injury settlement. We agree with Mr. Taranto that in some cases unfairness could result if the court considers 100% of personal

---

3. *See also Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346 (1996); *Good v. Armstrong,* 218 Mich. App. 1, 554 N.W.2d 14 (1996); *In re Marriage of* *Swan,* 526 N.W.2d 320 (Iowa 1995) (all including lump-sum settlements as income).

injury settlement payments in determining a parent's child support obligations. As Mr. Taranto notes, in many cases a part of those payments is intended to reimburse the recipient not just for lost income, but also for past and future medical expenses and pain and suffering. If these payments are all included in gross income and must be used to pay child support, then the recipient may not have sufficient money left to pay future medical expenses.

Similar considerations have led some courts in other states to distinguish between that portion of a personal injury settlement intended to compensate for lost wages and that portion intended to compensate for medical care or pain and suffering. The former is included in income, while the latter is not. In *Mehne v. Hess,* 4 Neb.App. 935, 553 N.W.2d 482, 487 (1996), none of the settlement was reimbursement for medical expenses; therefore, the entire amount was included in gross income.

In *Gallegos v. Gallegos,* 174 Ariz. 18, 846 P.2d 831 (App.1992), the father settled a personal injury claim and received two payments totalling nearly two million dollars. The father invested these funds and received an average of $9,161 per month. His monthly medical expenses, however, could possibly have exceeded $6,000. The trial court included the entire amount of the settlement in the father's income. The Arizona Court of Appeals reversed and remanded, directing the trial court to determine what portion of the settlement was for medical care and to subtract this amount from the father's gross income. Similarly, *In re Marriage of Durbin,* 251 Mont. 51, 823 P.2d 243, 249 (1991), reversed the trial court's ruling and remanded so the trial court could determine the father's actual medical expenses and subtract those from his financial resources.

The decisions in these cases were possible because the governing statutes in the states involved were narrower and did not mandate that the entire settlement be included in gross income. As discussed above, Form 14 does mandate the full inclusion of annuities in gross income, without distinguishing between personal injury settlement annuities and other annuities. We thus cannot follow

those states which include part but not all of the annuity in gross income.

Missouri law does provide a means for a court to consider the types of equitable and practical factors which led the courts in *Mehne, Gallegos,* and *Durbin* to include only part of the parent's personal injury settlement in gross income, however. Missouri law specifically gives a court discretion to find the Form 14 amount "unjust and inappropriate" and to adjust it upward or downward as circumstances dictate. For example, the Missouri Supreme Court specifically recognized in *Buckner,* 952 S.W.2d at 712, that, while the trial court in that case was required to include all of the father's "per diem" payments in determining the father's gross income under Form 14, the court had the discretion to order a departure from Form 14 if it found the resulting child support amount to be "unjust and inappropriate" in light of all the relevant factors, stating:

> Among the "relevant factors" specified as justifying deviations from the presumptive amount [of child support determined under Form 14] is "the financial resources and needs of the parents." *Rule 88.01(b).* The financial needs of a parent may include the need to expend funds included in "gross income" in order to maintain employment. Where a parent rebuts the presumptive child support amount by presenting credible evidence that a significant portion of "gross income" is spent on reasonable and necessary employment-related expenses, the trial court has discretion to deviate from the presumed child support amount after making a written or specific finding on the record that the Form 14 amounts are unjust or inappropriate.

*Id.* at 712.

The principles set out in *Buckner* are directly applicable here. While the Division and the trial court were required to include Mr. Taranto's annuity payments in gross income in determining his child support obligation, they should also have considered whether the resulting child support payment was unjust and inappropriate in light of the factors set out in Rule 88.01(b). In making this determining the Division can and should consider whether some or all of Mr. Taranto's annuity payments are intended to pay for

medical expenses which Mr. Taranto will incur or has incurred, and if for this or other reasons the amount of child support otherwise payable under Form 14 is unjust or inappropriate and should be reduced.

Below, Mr. Taranto testified that he had "numerous operations as a result of the gun shot injury." He also stated that he was going to require future surgery or medical treatment. He offered no specific evidence to support this testimony, nor did he provide a basis for the decision maker to determine how much of his payments were for medical expenses. It was not clear at the time that such evidence was required, however. We therefore find it appropriate to remand to allow Mr. Taranto to put on further proof of this issue.[4]

### IV. HEALTH INSURANCE COVERAGE

In its second point on appeal, the Division argues that the Administrative Hearing Officer properly ordered Mr. Taranto to "name and maintain the minor child as a covered dependent on any health insurance policy available on a group basis, or through [Mr. Taranto's] employer or union." Mr. Taranto argues that we should instead rule, as did the trial court below, that, because Ms. Hamilton's insurance provides coverage for Abigail at no cost to her, he should only be required to maintain health insurance coverage for Abigail if he is able to obtain a "health insurance policy available on a group basis, or through his employment or union, which is provided at no cost to [him]."

Our review of the record confirms that Ms. Hamilton testified that she provides health insurance coverage for Abigail at no cost through her employer. Mr. Taranto testified that he does not now have health insurance coverage for Abigail, but he did not indicate whether such coverage is available to him through his employer or union, nor if so at what cost.

 Section 454.603.2 requires the court and the Division to order a parent to provide health insurance coverage whenever such coverage is available "at reasonable cost"

through the parent's employer or union. The Division argues that this means Mr. Taranto must provide insurance if it is available through his union or employer, without regard to the fact that such insurance is already available at no cost through his former wife's employer.

We disagree. This provision simply states that insurance must be provided if it is available "at reasonable cost." What cost is reasonable depends on all of the circumstances, including the fact that coverage is being provided by the other parent at no cost. On the other hand, the mere fact that Ms. Hamilton is providing coverage does not mean that Mr. Taranto has no obligation to provide coverage. Section 454.603.4 indicates that if more than one health plan is available to a child who is not otherwise covered by a plan, then the court should compare the plans and their costs and determine which coverage is best. Section 454.603.7 states that if two or more plans are available that are complementary to each other or are compatible as primary and secondary coverage, then a court may order each parent to maintain coverage.

On remand, the agency must consider whether insurance coverage for Abigail is available to Mr. Taranto through his employer or union, the cost of such coverage, and the benefits available. If, on remand, the agency determines that health benefit plans are available to both parents at reasonable cost, it shall determine which plan should cover Abigail. § 454.603.4. The agency may also order both parents to maintain coverage if health benefit plans are available to both and the plans are complementary to one another or compatible as primary and secondary coverage. § 454.603.7.

For all the foregoing reasons, we reverse and remand for further proceedings in accordance with this opinion.

All concur.

---

4. Mr. Taranto also argues that neither of the Form 14's submitted by the parties indicated that the agency should include Mr. Taranto's personal injury settlement in gross income. The court must, however, reject both parties' Form 14's and prepare its own if neither party's Form 14 is accurate. *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo.App.1996).