**STATE of Missouri, ex rel. Laverne COTE, Petitioner–Respondent,**

v.

**Jimmy KELLY, Respondent–Appellant.**

No. 22155.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 3, 1998.

determined that Father was the biological father of S.C., born June 3, 1990, and ordered Father to pay child support in the amount of $150.00 per month, together with medical insurance for the child if available through Father's group, employer or union. *See* § 454.475, RSMo Cum.Supp.1997; §§ 536.100–.140, RSMo 1994. Father does not contest paternity.

On appeal from a circuit court's judgment reviewing the determination of an administrative agency, we review the decision of the agency, not the judgment of the circuit court. *Taranto v. Missouri Dep't of Soc. Serv.*, 962 S.W.2d 897, 899 (Mo.App. 1998); *Cole v. Department of Soc. Serv., Div. of Child Support Enforcement*, 896 S.W.2d 71, 73 (Mo.App.1995). We determine whether the agency action was supported by competent and substantial evidence, was arbitrary, capricious, or unreasonable, or was an abuse of discretion. *Id.; see* § 536.140.2; *Cole*, 896 S.W.2d at 73. When the action being reviewed does not involve the agency's discretion, but instead involves only application of the law to the facts, the court may weigh the evidence for itself and determine facts accordingly. *Taranto*, 962 S.W.2d at 899–900; *see also* § 536.140.3, RSMo 1994. "If the findings of the agency are supported by substantial and competent evidence in the record, they must be affirmed, but if they are contrary to the determinative undisputed facts, the decision is arbitrary and unreasonable and must be reversed." *Missouri State Div. of Fam. Serv. v. Hill*, 816 S.W.2d 702, 703 (Mo.App.1991).

On December 5, 1996, the Division of Child Support Enforcement (Division) issued a notice and finding of financial responsibility to Father, informing him that he was presumed to be the biological father of S.C., and that he was responsible therefore for certain medical support for his child, together with the obligation to pay the custodial parent, Laverne Cote (Mother), monthly child support in the sum of $172.00. Father requested an administrative hearing pursuant to sections 454.470 and 454.475, RSMo Cum.Supp.1997.

At the administrative hearing, Father testified that he was a self-employed saw mill

Douglas R. Kennedy, Kennedy & Kennedy, Poplar Bluff, for Appellant.

James M. McCoy, Dept. of Social Services, Div. of Legal Sevices, Jefferson City, for Respondent.

BARNEY, Judge.

Jimmy Kelly (Father) appeals from the judgment of the Circuit Court of Ripley County, Missouri, affirming the order of an Administrative Hearing Officer of the Missouri Department of Social Services, Division of Child Support Enforcement. The agency

operator, working an average of eight months per year and that the saw mill was his sole source of income. He stated that he incurred monthly bills in the amount of $1,857.00, including $580.00 for payment on his saw mill equipment. He testified that he reported losses on his income tax returns, due primarily to the depreciation on his equipment. However, he presented no tax returns at the hearing, nor could he specify how much loss he reported in his last tax return. He did not submit a Form 14 for the agency's consideration.

Father also testified that although his present wife had health problems, neither he nor his present wife were disabled. The record indicates that Father's present wife's gross income was $700.00 per month. Although Father testified that he was responsible for the rearing of three other children and a grandchild, the testimony showed that his seventeen-year-old daughter was the mother of his grandchild and that his daughter was working outside the home. The evidence further showed that he was not required to make child or spousal support payments to anyone. Nevertheless, Father maintained that he had no available income for the payment of additional child support.

Mother testified that she was not disabled, but was unemployed, and received social security benefits "on [her] deceased husband" in the sum of $1,089.00 per month, of which amount "over" $300.00 was for herself and the balance was for the support of two of her three minor children.

The Hearing Officer relied on the Form 14 worksheet prepared by the Division and calculated Mother's monthly gross income at $363.00. The Hearing Officer granted Mother an "adjustment" in the amount of $50.00 per month for other child support obligations, yielding an adjusted monthly gross income of $313.00. Father was imputed a monthly gross income of $823.33, based on his ability to earn minimum wage. After crediting him $110.00 per month for other child support obligations, Father's adjusted monthly gross income was calculated by the Hearing Officer at $713.33.

The Hearing Officer also found that S.C.'s parents' combined adjusted gross income was $1,026.33, resulting in a preliminary support obligation of $216.00 per month pursuant to Form 14 guidelines. *See* Form No. 14, Missouri Court Rules (1997). She ordered that Father was responsible for 69.50% of the monthly child support obligation, yielding a sum of $150.00 (rounded) per month for S.C.'s support, together with "medical insurance for the child, if it is available through group, employer or union." Father duly filed his petition for review of the order of the Hearing Officer.

On appeal to this Court, Father assigns three points of error. Father argues that the agency erred in imputing *any* monthly gross income to him because no evidence was presented showing him to be either unemployed or underemployed, such that the imputation of income to him was proper; he also argues that he is unable to pay the ordered monthly child support without harming his other children. Second, Father maintains that his present wife's monthly gross income was improperly considered by the Hearing Officer for the purpose of calculating his gross monthly income available for child support. Lastly, Father alleges error in calculating his gross income because the Hearing Officer failed to deduct from his gross monthly income his depreciation expenses for his saw mill equipment.

· I.

▪ In our review of Father's first point of error regarding imputation of income, we review the evidence in the light most favorable to the agency's decision. *Gamble v. Hoffman,* 732 S.W.2d 890, 892 (Mo. banc 1987). "[W]e defer to the agency's expertise and findings with regard to the credibility of witnesses, and 'if the evidence permits either of two opposed findings, we should accept the findings of the administrative body.'" *State ex rel. Bramlet v. Owsley,* 834 S.W.2d 868, 870 (Mo.App.1992). "To determine the amount of child support due, a court *or administrative agency* must consider all relevant factors, including the financial resources of the parents. Rule 88.01(b); § 452.340.1(2)." *Taranto,* 962 S.W.2d at 900

(emphasis added). "In paternity actions, as in all other cases, child support is to be determined pursuant to Form 14." *Id.* (citing *State, Div. of Fam. Serv. v. Williams,* 861 S.W.2d 592, 595 (Mo.App.1993)). We, therefore, are guided by Missouri case law interpreting trial court decisions involving child support in dissolution of marriage and paternity actions.

The Directions for Completion of Form 14 provide, *inter alia,* that "[i]f either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income." Form No. 14, Missouri Court Rules (1997); *see also* 13 CSR 30-5.010(1)(A)2.

Form 14 also mandates that in order "[t]o determine potential income, the court *or administrative agency* may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, [and] prevailing job opportunities in the community...." Form 14, Missouri Court Rules (1997)(emphasis added); *see also In re Marriage of Julian,* 868 S.W.2d 182, 184 (Mo.App.1994).

Father testified that he earned income from his self-employed, saw mill operation eight months per year but was unable to estimate the amount of his annual earnings. He asserted in his brief, nevertheless, that his income was less than the $823.33 per month calculated by the Division in its Form 14 submission to the Hearing Officer. He testified that he claimed losses on his income tax returns from his saw mill operation "basically because of the depreciation on ... equipment," but, as previously noted, was otherwise unable to substantiate these losses by the presentation of tax returns or other documentation for the agency's consideration.

Father acknowledged that he was not disabled. He also stated that after making monthly payments for household and business expenditures in the approximate amount of $1,857.00 per month (inclusive of monthly loan payments of $580.00 for his saw mill equipment) he had no income available for additional child support.

We determine that Father's testimony and the record in this matter support the agency's conclusion that Father had the potential to earn at least minimum wage, i.e., $833.33 per month. He was able-bodied and capable of working 12 months per year. "There was no showing that [he] was unemployable...." *Ripley v. State of New York,* 905 S.W.2d 106, 107 (Mo.App.1995). Father also testified that he presently has sufficient cash flow to make his loan payments and assist in meeting his family's normal, monthly household expenses.[1]

■ "[C]ourts have imputed to a [parent] a higher income than is currently being earned if evidence indicates that the [parent] has the capacity to earn more." *Stufflebean v. Stufflebean,* 941 S.W.2d 844, 846 (Mo.App. 1997). "A parent may not escape responsibility by voluntarily declining to work, by deliberately limiting work to reduce income, or by otherwise disabling himself financially." *In re Marriage of Julian,* 868 S.W.2d at 184.

We observe that not only did Father fail to submit a Form 14 detailing *any* income, he also failed to sufficiently identify what income and what business expenses he incurred in the operation of his saw mill business.[2] He, therefore, failed to sustain his burden of showing that his paucity of income was due to involuntary conditions beyond his control. *See Holmes v. Holmes,* 878 S.W.2d 906, 910 (Mo.App.1994) (by failing to offer an explanation for his discharge, husband failed to sustain his burden of proving that his dismissal and subsequent decrease in income were involuntary).

Father will be required "to adjust income or obligations, or both, in such a way as to

---

**1.** In *Gal v. Gal,* 937 S.W.2d 391, 396-97 (Mo. App.1997), the appellate court found no abuse of trial court discretion in attributing certain undocumented loans without repayment provisions to father as gross income for the purpose of calculating child support.

**2.** We note that Father's failure to file a Form 14 generally precludes appellate review of any allegations of error arising from the calculation of his monthly child support obligation. *See Williams,* 861 S.W.2d at 595. We have nonetheless *ex gratia* reviewed Father's allegation of error.

provide the payment of the child support he is ordered to pay." *Cash v. Cash*, 812 S.W.2d 265, 267 (Mo.App.1991). There is sufficient evidence in the record of this matter to support the agency's order of child support. *See Taranto*, 962 S.W.2d at 899. Point denied.[3]

## II.

Father contends in his second point that the Hearing Officer improperly "considered" evidence of his present spouse's monthly gross income of $700.00 "for the purposes of calculating [Father's] income." However, in considering evidence of Father's spouse's monthly gross income, the Hearing Officer merely recounted that Father was contending that he was solely responsible for all household bills. She observed that "if there's other income coming into the household to help pay them, I think that makes it relevant." We agree with the Hearing Officer's analysis. The evidence was relevant as to Father's ability to pay, his financial resources, and his argument that to pay his obligation would "impoverish" his "other" children. Additionally, nowhere in the Form 14 is there a calculation reflecting Father's spouse's $700.00 monthly gross income, nor are there any recitals by the Hearing Officer in her order regarding Father's spouse's income.

Viewing the evidence in the light most favorable to the agency's decision, *Gamble*, 732 S.W.2d at 892, we determine that the agency did not err in considering evidence of Father's present spouse's gross monthly income in this case. Point denied.

## III.

Lastly, we determine that Father's third point has no merit, wherein he alleges error by the Hearing Officer in "failing to consider" depreciation of equipment used in Father's saw mill operation in calculating his gross monthly income under Form 14.

We first observe that it is not altogether clear what depreciation figure Father is con-

tending. His point fails to identify a specific sum. Although, as previously noted, he testified that he made monthly loan payments of $580.00 for his saw mill equipment, Father failed to present any income tax returns or other documentation specifically delineating an amount for depreciation. The closest Father came to mentioning depreciation in his testimony was when he acknowledged that he had losses on his tax returns "basically because of the depreciation on ... equipment and that sort of thing[.]"

The Directions for Completion of Form 14 provide that "[f]or income from ... self-employment ... 'gross income' is defined as gross receipts minus ordinary and necessary expenses required to produce income." Form No. 14, Missouri Court Rules (1997). Additional instructions provide that the "court *may* exclude from ordinary and necessary expenses amounts for depreciation ... and other noncash reductions of gross receipts." *Id.* (emphasis added). In this context, the language of Form 14 is "permissive rather than mandatory." *Schubert v. Tolivar*, 905 S.W.2d 924, 929 (Mo.App.1995). Therefore, "[t]he directions allow, but do not require, the trial court to exclude depreciation income." *In re Marriage of Glueck*, 913 S.W.2d 951, 956 (Mo.App.1996). "[G]ross income for child support purposes 'may differ from a determination of business income for tax purposes.'" *In re Marriage of Chorum*, 959 S.W.2d 900, 905 (Mo.App.1997); *see also* 13 CSR 30–5.010(1)(A)2.

In this case, we find no abuse of agency discretion in refusing to exclude an amount for business equipment depreciation in calculating Father's gross monthly income. *See Schubert*, 905 S.W.2d at 929. Point denied.

The judgment is affirmed.

GARRISON, C.J., and MONTGOMERY, J., concur.

---

**3.** As for Father's contention that imposing additional child support payments would result in harming his other minor children, we observe that when "determining the amount of child sup-

port to be paid, the application of Rule 88.01 and Form 14 is mandatory." *Spradling v. Spradling*, 959 S.W.2d 908, 913 (Mo.App.1998).