STATE of Missouri ex rel. Linda
BURTON, Plaintiff,

State of Missouri Department of Social
Services, Division of Child Support
Enforcement, Respondent,

v.

Bobby J. LAWTON, Appellant Pro Se.

No. WD 63056.

Missouri Court of Appeals,
Western District.

June 29, 2004.

Bobby J. Lawton, St. Joseph, MO, pro se.

Lawrence D. Love, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, PAUL M. SPINDEN, Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Chief Judge.

Bobby J. Lawton ("Lawton") appeals a final judgment of the Circuit Court of Buchanan County affirming the decision of

the State of Missouri, Department of Social Services, Division of Child Support Enforcement ("the Division"), to authorize the Missouri Department of Revenue ("DOR") to intercept, pursuant to §§ 143.781–143.788,[1] a series of state income tax refunds otherwise due Lawton totaling $384.53, in order to satisfy what the Division had determined to be the sum of $528.00 in past-due child support obligations owed by him. After reviewing the record and the law, we reverse and remand to the circuit court for its entry of a final judgment in favor of Lawton.

## Standard of Review

■■■ We review the decision of the Division, not the judgment of the circuit court. *Taranto v. State of Mo., Dep't of Soc. Servs., Div. of Child Support Enforcement,* 962 S.W.2d 897, 899 (Mo.App. W.D. 1998); *Cole v. Dep't of Soc. Servs., Div. of Child Support Enforcement,* 896 S.W.2d 71, 73 (Mo.App. S.D.1995). Section 454.475.5 states that this review is to be had "pursuant to sections 536.100 to 536.140," and § 143.785.4 provides that "[a]ppeals from actions taken at the hearing allowed under this section shall be in accordance with the provisions of chapter 536, RSMo." Under Chapter 536, the scope of our review extends to a determination of whether the Division's action: (1) was in violation of constitutional provisions; (2) was in excess of its statutory authority or jurisdiction; (3) was unsupported by competent and substantial evidence upon the whole record; (4) was, for any reason, unauthorized by law; (5) was made upon unlawful procedure or without a fair trial; (6) was arbitrary, capricious or unreasonable; or (7) involved an abuse of discretion. *§ 536.140.2; see also Taranto,* 962 S.W.2d at 899; *Cole,* 896 S.W.2d at 73. Where, as here, the action being reviewed does not involve the exercise by the Division of administrative discretion, but instead involves only the application by the Division of the law to the facts, the reviewing court "may weigh the evidence for itself and determine the facts accordingly." *§ 536.140.3; Taranto,* 962 S.W.2d at 899–900. Moreover, to the extent the Division's decision is "based upon an interpretation, application, or conclusion of law, it is subject to this Court's independent judgment." *Cmty. Bancshares, Inc. v. Sec'y of State,* 43 S.W.3d 821, 823 (Mo. banc 2001). In other words, the decision of the Division "on a question of law does not preclude, restrict or control review of the issue by the Court." *Kansas City v. Mo. Comm'n on Human Rights,* 632 S.W.2d 488, 490 (Mo. banc 1982).

## Facts and Procedural History

The facts of this case are more than a little confusing. On September 25, 1997, the Circuit Court of Buchanan County entered a judgment declaring Lawton to be the natural father of a minor, Chasity Marie Reital, who was born on December 20, 1986. Lawton was ordered to pay child support of $326.00 per month to Chasity's physical custodian, Linda G. Burton ("Burton," formerly Linda G. Mastin), "retroactive to February 28, 1997." The judgment further stated that the payments were to be made "on the twenty-eighth day of each month until further order of the Court or until [Chasity] is emancipated." On April 16, 2001, the circuit court's September 25, 1997 judgment was modified to increase Lawton's child support payments to $528.00 per month. The modified judgment further stated that the newly-increased "[p]ayments are due on the 1st day of each month, beginning on 02–28–2001."

The Division subsequently determined that as of the morning of September 10,

1. All statutory references are to RSMo 2000.

2002, Lawton owed a total of $528.00 in past-due child support. Later that day, the Division authorized DOR to intercept the entirety ($50.96) of Lawton's state income tax refund for the 2000 tax year. The intercept notice sent to Lawton, which was dated September 11, 2002, stated that Lawton's "claimed debt" for Buchanan County "Court Ordered Child Support" at that time was not $528.00, but the sum of $389.54.[2] On September 17, 2002, the Division authorized DOR to intercept, in their entirety, two of Lawton's other state income tax refunds: $266.00 for the 2001 tax year, and $67.57 for the 1999 tax year. However, despite the State Treasurer's receipt of the $50.96 tax intercept a week earlier, the intercept notice sent to Lawton as to the $266.00 tax intercept, which was dated September 18, 2002, stated that Lawton's "claimed debt" for Buchanan County "Court Ordered Child Support" was still $389.54.[3] The intercept notice sent to Lawton as to the $67.57 tax intercept, which was also dated September 18, 2002, stated that Lawton's "claimed debt" for Buchanan County "Court Ordered Child Support" was down to $123.54.[4]

As authorized by 454.475.1 and 143.785.1, Lawton challenged the validity of these tax intercepts by requesting a contested administrative hearing, during which he was represented by counsel. An administrative hearing officer conducted the hearing on December 4, 2002, during which both Lawton and one of Divisions child support enforcement investigators, Melissa Tracy ("Tracy"), testified. On January 17, 2003, the hearing officer issued findings of fact and conclusions of law upholding the Divisions decision to authorize DOR to conduct the tax intercepts, which took place on September 10 and September 17, 2002. As authorized by 454.475.5 and 143.785.4, Lawton then timely sought judicial review of the Divisions decision [5] in the Circuit Court of Buchanan County, which, on July 1, 2003, entered a judgment sustaining the Division's decision. This appeal, which was authorized under 143.785.4 and 536.140.6, followed.

## Analysis

Reduced to its essence, in his sole point on appeal, Lawton argues that since the

2. This discrepancy, which the Division does not even attempt to explain in its brief and was similarly ignored at the administrative and circuit court levels, appears to have arisen from a check sent to the Buchanan County Circuit Clerk on behalf of Lawton by his employer, Aero Systems Engineering, Inc. in Marietta, Georgia, in the amount of $138.46. What evidently happened is that when the check was received on July 15, 2002, Lawton was credited with a payment of $138.46, thereby reducing Lawton's claimed arrearage from $528.00 to $389.54. (On the following day (July 16, 2002), the Division disbursed a $138.46 check to Burton.) Later, Aero Systems Engineering stopped payment on the check, so Lawton's claimed arrearage went back up to $528.00. (On August 20, Burton evidently returned the $138.46 she had been paid on July 16.) Unfortunately, the Division seems to have failed to make DOR aware of these developments before requesting that it perform the September 10 tax intercept.

3. This was due to yet another accounting or certification error on the part of DOR and/or the Division.

4. As $389.54 minus $266.00 equals $123.54, the second September 18, 2002 intercept notice clearly reflected the State's receipt of the first September 17, 2002 tax intercept in the amount of $266.00. However, for whatever reason, the September 10, 2002 tax intercept of $50.96 had still not been credited to Lawton by DOR to reduce his "claimed debt" for what the Division had determined to be his delinquent Buchanan County court-ordered child support.

5. As the hearing was contested, the hearing officer's findings and conclusions became, by operation of law, "the decision of the [D]irector" of the Division. § 454.475.5.

Division failed to prove that he owed any past-due child support on either September 10, 2002 or September 17, 2002, the tax intercepts conducted by DOR on those dates were unlawful and the circuit court's judgment sustaining the Divisions decision to authorize them must be reversed.[6] We agree.

At the hearing, Tracy testified that as of the morning of September 10, 2002, Lawton owed a child support arrearage of $528.00. Tracy explained that she arrived at this figure by taking the amount of child support the pertinent records showed to have been payable by Lawton during the period from February 28, 1997 to September 10, 2002, which was $25,680.00, and subtracting from that figure the amount of child support the records showed to have been paid by him during the same period, which was $25,152.00. This left what the records showed to be an arrearage of $528.00 as of September 10, 2002.

As acknowledged by the Division in its brief, the Division had the burden of proof to establish, by competent and substantial evidence, that Lawton owed $25.00 or more in past-due court-ordered child support on both September 10, 2002 and September 17, 2002. *See 143.784.1* (stating the "a state agency seeking to collect a debt through setoff shall ... *certify* the amount of the debt or debts owed by each such debtor") and *143.784.3* ("If the application for hearing alleges a *defense* to the nature or amount of the claim upon which the setoff is based which requires an evidentiary hearing, the state agency shall promptly conduct such hearing in accor-

dance with the provisions of chapter 536, RSMo.") (emphasis added). Our careful examination of the whole record under § 536.140.3 reveals that the Division failed to meet that burden. While Tracy's calculations concerning the amount of child support actually paid by Lawton during the period from February 28, 1997 to September 10, 2002 (*i.e.*, $25,152.00) were correct, the Division's records (and hence Tracy's testimony and associated exhibits) did not establish, by competent and substantial evidence, that the amount of child support which was payable by him during the same period was $25,680.00.

The records in question, which make it quite clear how this situation arose, were offered into evidence by the Division and admitted by the hearing officer. These records consisted of an exhibit consisting of a handwritten "Support Calculation Summary" and "Support Calculation Worksheet" prepared by Tracy, as well as an unverified copy of the Circuit Court of Buchanan County's computer-generated "Payment Detailed History Reports" extracted from the Missouri Automated Child Support System (MACSS) for the time periods in question.

 The problem is not with Tracy's arithmetic; but the assumptions on which it rested. As mentioned *supra*, the original September 25, 1997 judgment ordered Lawton to pay child support of $326.00 per month to Burton "retroactive to February 28, 1997." The judgment further stated that the payments were to be made "on the twenty-eighth day of each month until

---

6. The parties are in agreement that under the terms of §§ 143.781–143.788, if an individual required by a court order to pay child support owes a past-due child support obligation in excess of $25.00, the Division may request that DOR intercept the obligated individuals Missouri income tax refund as a set-off against the amount of past-due child support.

Furthermore, in its brief, the Division tacitly acknowledges that the tax intercepts at issue in this case were conducted unlawfully if Lawton did not owe $25.00 or more in past-due court-ordered child support payments as of September 10 and 17, 2002. For these reasons, we do not discuss those statutes in any further detail.

further order of the Court or until [Chasity] is emancipated." "The words and clauses used in a judgment are to be construed according to their natural and legal import." *State ex rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137, 141 (Mo.App. W.D.2001). While the language used by the court plainly indicates that Lawton's obligation to provide support for Chasity commenced on February 28, 1997, it is far from clear whether his first monthly support payment of $326.00 was due that very day (as reflected in the Division's records), or whether it was due on the 28th day of the *following* month, or March 28, 1997.[7] Indeed, as it is reasonably susceptible to different constructions, the court's September 25, 1997 judgment was at best ambiguous as to that particular factual issue. *Id.*[8] That is to say, the record does not establish whether the court intended that Lawton pay his monthly child support in advance (thereby making his first payment of $326.00 due on February 28, 1997), or whether it intended that his first $326.00 payment become due on March 28, 1997. Accordingly, we hold that the Division failed to meet its burden to prove that Lawton had *any* child support liability for the one-month period ending on February 28, 1997.[9]

As explained earlier in this opinion, the original child support judgment of September 25, 1997 was modified several years later. The modified judgment of April 16, 2001, which increased Lawton's child support payment to $528.00 per month, stated that the "[p]ayments are due on the 1st day of each month, beginning on 02–28–2001." While the drafting of this judgment also leaves much to be desired, here we are able to read it in context. Lawton owed and paid a $326.00 child support payment on February 28, 2001 pursuant to the original judgment of September 25, 1997. It would be illogical for the court to require him to pay that amount on February 28, 2001, and then an additional $528.00 on the very next day, March 1, 2001. Rather, we think the modified judgment clearly manifested the intent that the higher support amount would begin to accrue after Lawton's February 28, 2001 payment (*i.e.* on March 1, 2001), with the first payment due on April 1, 2001 and subsequent payments on the first day of each month thereafter. Accordingly, we hold that Lawton's first $528.00 payment became due *not* on February 28, 2001 (as reflected in the Division's records), but on April 1, 2001. Likewise, his child support liability for the one-month period ending on February 28, 2001 was *not* $528.00 (as found by the Division), but only $326.00, which means that the Division overstated his past-due child support liability as of the morning of September 10, 2002 by an additional $202.00.

As a direct result of these errors, which were propagated throughout the months

---

7. As this case demonstrates, since questions can arise about exactly when child support payments are due, better practice would dictate that judgments imposing child support obligations clearly and unambiguously set forth: (1) the date on which child support begins to accrue; (2) the date the first payment is due; and (3) the date on which subsequent payments are due (*e.g.,* "on the first day of each month thereafter.")

8. "The entire record, therefore, must be searched for clues in attempting to divine the intentions of the trial court." *Laffey v. Laffey,* 72 S.W.3d 143, 152 (Mo.App. W.D.2002). We have scrutinized the whole record before us for a firm indication one way or the other, but were unable to find any such indications. In their briefs, the parties have shed no light on the matter either.

9. As a practical matter, this also means that the Division overstated Lawton's past-due child support liability as of the morning of September 10, 2002 by $326.00.

that followed, the Division concluded that as of the morning of September 10, 2002, Lawton owed a total of $528.00 in past-due child support—when in point of fact and law the Division failed to prove that he owed any arrearage at all. Thus, the September 10 and 17 tax intercepts performed by DOR at the Divisions request were unlawful.

**Conclusion and Disposition on Remand**

For the foregoing reasons, we hold that the Division erred in authorizing DOR to conduct the three state income tax intercepts which were performed on September 10 and September 17, 2002. The circuit court's judgment upholding the Division's actions is, therefore, reversed, and the cause is remanded to the circuit court for its entry of a final judgment in favor of Bobby J. Lawton on his petition for judicial review of the Division's decision and for such further proceedings and orders as are not inconsistent with this opinion. *See* § 536.140.5.

In his opening and reply briefs, Lawton requested a "refund of all tax monies seized, plus interest." As we have held, the Division caused a total of $384.53 to be unlawfully seized from Lawton by DOR ($50.96 on September 10, 2002, plus $266.00 and $67.57 on September 17, 2002). Under §§ 143.781.6 and 143.786.1, Lawton is entitled to a full refund in the amount of $384.53, plus an award of statutory interest to be calculated on remand. Furthermore, to the extent the Division's records still incorrectly state the amount of child support which was payable by him from February 28, 1997 to the date of this opinion, the Division is to promptly correct them and award Lawton whatever credits or offsets may be necessary to do so. *See* *143.785.1* ("If the sum asserted as due and owing is not correct, an adjustment to the claimed sum shall be made.") Moreover, the Division is to correct its records to reflect the fact that Lawton's current monthly child support payments of $528.00 are due on the first day of each month.[10]

One other matter remains: in his opening and reply briefs, as well as before the circuit court and the Division, Lawton also requested an award of his reasonable attorney's fees and expenses pursuant to § 536.087.[11] However, an application for an award of attorney's fees and expenses under § 536.087 must be "filed in the court, agency, or commission that rendered the final disposition or judgment for the prevailing party." *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 350 (Mo. banc 2001). Accordingly, should Lawton wish to litigate the issue of his entitlement to such an award, he should timely file an application containing all the required elements in the circuit court after the cause has been remanded and the circuit court's judgment in his favor becomes final. *See Lacey v. State Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 843 (Mo.App. W.D.2004); *§ 536.087.4.*

All concur.

---

10. The briefs of both parties, as well as the pertinent records themselves, make it obvious that everyone involved in this case is laboring under the mistaken impression that Lawton's present monthly child support payments of $528.00 are due on the twenty-eighth day of each month. However, as specified in the modified judgment of April 16, 2001, they are not—they are due on the first day of each month.

11. Although Lawton has prosecuted this appeal *pro se*, he was represented by counsel in the proceedings before the Division and the circuit court.