David LOETEL, Respondent,

v.

Pamela LOETEL, Appellant.

No. WD 36554.

Missouri Court of Appeals,
Western District.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled and
Denied March 4, 1986.
Application to Transfer Denied
April 15, 1986.

Michael J. Maloney and Bert S. Braud,
Kansas City, for appellant.

Don Witt and Robert H. Shaw, Platte City, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Trial court modified child support and visitation provisions of decree by reducing father's child support obligation for two children (Christine, 7, and Stephanie, 9,) from $450 to $300 per month; and by ordering mother to provide transportation for children from her home in Springfield, Missouri, to father's home in Platte County for visits, he to furnish return transportation. The original decree had provided for father to provide transportation both ways. Modification reduced number of visits, but extended length of visits. The mother has appealed.

We affirm the judgment.

The evidence showed the following changes in circumstances since the original decree:

The mother had settled a claim for damages for medical malpractice in her own behalf and in behalf of one of the children, seven-year-old Christine, who was severely disabled as a result of the alleged malpractice. By the terms of the settlement, the defendants paid to the child $264,800 in cash and in addition thereto the beginning sum of $2,000 per month, increased at a compound rate of 3% per annum until the child reached age 18. (In the tenth year the monthly amount would be $2,610.) At age 18 she was to receive a beginning sum of $4,000 per month for life, also increased at a compounded annual rate of 3% per annum. (In the 20th year, the monthly amount would be $7,016, in the 40th $12,-668.) The payments were guaranteed for 30 years with respect to one-half the annuity payments and for 32 years with respect to the other half. If the child dies before those respective guaranteed periods have passed, the remaining payments will be paid to the mother.

The mother in her own behalf received $10,000 "up front" and then $15,000 per annum for 30 years.

There is no evidence about attorney's fees by which the settlement figure was reduced. We rather think from the testimony that the attorney's fees came from the up-front cash, and none from the annuities.

The father received nothing in the settlement so far as the evidence shows.

The mother says the trial court should not have considered the amounts received by the child in settlement of the personal injury claim.

We think the mother is wrong in this contention. Section 452.340, RSMo 1978, lists the child's resources as a factor to be considered in fixing child support.

■ A change in the child's resources may be considered by the trial court upon motion to modify, especially where it is alleged as a reason for modification of child support. The language in § 452.370, RSMo Supp.1984, which says the court upon motion to modify shall consider "all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed" does not *limit* the subjects which the court may consider; the court is not confined to those subjects which are expressly mentioned in § 452.370 but obviously may consider a wide range of circumstances which bear upon the amount of child support. The mother's case of *In Re Marriage of Hoak*, 364 N.W.2d 185 (Iowa 1985), does not support her position. There the court held that the custodial mother should not be required to convert to cash certain non-income producing stock of a closely-held corporation, which stock had been received by the children as a gift from the father before the divorce, in order to relieve a well-to-do father of child support payments in whole or in part. The court does recognize, however, that "[t]he children's resources should be considered" and

also says: "[W]e consider that it would not be inappropriate if [the mother] would use the income from the present accounts which provide interest or dividends, including the Heritage preferred stock, for the support of the children." *Hoak,* 364 N.W.2d at 190–91. *See also Trunko v. Trunko,* 642 S.W.2d 673, 677, n. 7 (Mo.App. 1982), regarding use of custodial funds set aside for the express purpose of education of the children in the event of husband's death or disability.

■ In the present case, there is no restriction upon the use of the child's funds received in the personal injury settlement. The evidence indicates that the funds were in a guardianship estate under the supervision of the Probate Court. They would be available for the child's support, § 475.125.-1, RSMo Supp.1984. It is noted that the court has not eliminated the father's child support obligation, but has simply reduced it.

■ Of course there is no question that the mother's resources from the settlement are entirely proper for the court's consideration, §§ 452.340(3) RSMo 1978; 452.370.1, RSMo Supp.1984. She had been earning $15,000 per year as a legal secretary before the settlement. She has quit that employment, but from January 1 to September 24, 1984, she had earned about $1,000 as a real estate agent. Christine's needs do not put employment out of the question for the mother, should she desire to take employment. Christine attends public school. She has made marked improvement. Her sister, Stephanie, age nine, sometimes cares for Christine for brief periods in her mother's absence, as does mother's present husband.

■ Another factor which has changed since the original decree is the mother's remarriage. Her new husband earned $15,234 in 1983, as shown by his income tax return. His income must be considered by the court under § 452.370.1, RSMo Supp. 1984. The support for which the mother may look to her spouse directly bears upon her own resources which are available for the support of the children.

■ The wife objects to evidence of or consideration by the court of the reduction in husband's income from $21,640 per annum at the time of the original decree to $19,476 at the time of the modification. It is true that this reduction in income was not pleaded in his motion to modify as a change of circumstances, but we do not understand the husband to be relying upon the reduction in income to justify the child support modification. He relies mainly upon the personal injury settlement. The wife is probably correct in arguing that this 10% reduction in the husband's income would not support a reduction in child support payments. *Magaletta v. Magaletta,* 691 S.W.2d 457 (Mo.App.1985); *Ward v. Ward,* 534 S.W.2d 593 (Mo.App.1976). Excluding any consideration of the husband's income reduction, however, there is still enough evidence in this record to support the trial court's decision. Nonetheless, it was required by statute, § 452.340(6), RSMo 1978, and § 452.370.1, RSMo Supp. 1984, that the court consider the husband's resources and it was perfectly in order for him to hear and to take into account evidence of the husband's present income, whether more or less than it was at the time of the original decree.

■ The mother since the original decree, upon her remarriage, had moved from Platte County, the place of her former residence and that of the husband, to Springfield, Missouri. The evidence fully justifies requiring the mother to furnish the children's transportation one way upon less frequent visits to the father's home. The evidence on this point does not require close examination in this opinion.

The judgment is affirmed.

TURNAGE, J., concurs.

CLARK, C.J., dissents in separate opinion.

CLARK, Chief Judge, dissenting.

I respectfully dissent from the majority opinion to the extent it affirms the trial court's order reducing respondent father's obligation to pay child support. I concur in affirmance of the modification made to child visitation arrangements. The basis for this dissent lies in errors of fact and law appearing in the majority opinion.

A fundamental misapprehension demonstrated at the outset of the majority opinion accounts in part for the incorrect result the majority opinion reaches. The majority says the trial court ordered reduction in the "father's child support obligation for two children (Christine, 7 and Stephanie, 9) from $450.00 to $300.00 per month; * * *." The statement is incorrect. Respondent by his motion made no claim to any reduction in the allowance for support of Stephanie, only that he be relieved of all duty to support Christine. It therefore follows that the only issue in the case as to child support was whether respondent was obligated to continue payments for Christine's benefit. The motion as filed necessarily presupposes no claim to a reduction in support payable on account of Stephanie and, corresponding to that claim, the order appealed must be regarded as dealing only with the entitlement of Christine for a continued support contribution from her father.

From this premise, it also follows that the only evidence this court may consider in determining whether the trial court's order was supported by competent and substantial evidence consists of proof offered to demonstrate the underlying contention by respondent, that Christine had resources sufficient to provide for her own support independent of the normal parental obligation. The only evidence on that subject dealt with a damage suit recovery paid on account of injuries the child suffered at birth.

According to the documentary evidence and testimony, Christine, suffers from cerebral palsy and is a severe quadriplegic spastic. She cannot walk unaided, she has limited speech ability and cannot feed or dress herself. She also is mentally retarded and requires special education. These conditions were, of course, present when the dissolution decree was entered May 24, 1982, at which time Christine was age four.

Some eighteen months after the dissolution decree, a settlement was concluded in a suit brought on behalf of Christine against the physicians who attended her birth and the hospital where the delivery occurred. The claim was one of medical malpractice alleged to have been the origin of Christine's mental and physical disabilities. Under the settlement, Christine is to receive payments of $2,000.00 per month until she reaches age eighteen.[1] Additional sums are payable for her benefit thereafter. It is this recovery of compensation to Christine for the permanent disability she will suffer the remainder of her life which constitutes the only ground upon which the trial court was entitled to consider respondent's claim that he be exonerated from any future duty to contribute to Christine's support.

It is appropriate to state again at this point that respondent's only claim in the modification motion was the contention he should not be required to pay any amount to support Christine. This element of the case, which appears to have escaped notice by the majority, necessarily excludes as probative or pertinent any proof of change in general family resources in appellant's household or similar changes in respondent's income. This follows because increase in appellant's income, the contribution to family support from appellant's hus-

---

1. A lump sum cash payment was also made at the time settlement was concluded, but that amount is not contended to be relevant in the modification action. It was apparently applied entirely to attorney fees. Appellant also received a settlement of her claim as Christine's mother. That amount and the annual payments she is to receive are also irrelevant because they do not constitute resources of Christine nor do they enhance appellant's income. The amounts merely replace earnings appellant could derive from employment outside the home were she not restricted by the need to care for the disabled child.

band after her remarriage and any reduction in respondent's income would bear equally on the support of Christine and her sister, Stephanie. Even under the most generous view of respondent's arguments and the majority opinion which affirms them, it cannot be seriously contended that a father may rely on such changed financial circumstances to discriminate between amounts payable in his contribution to the support of siblings in the same household.

All references in the majority opinion to respondent's resources, the support of her present spouse and the slight reduction in respondent's income are inappropriate to the issues in this case. We are concerned only with respondent's obligation to support his daughter, Christine and whether the damage settlement recovered for Christine's benefit should serve to exonerate respondent from his duty to contribute to her support. The majority opinion therefore errs when it attempts to sustain its conclusion by resorting to evidence of general changes in financial circumstances of the respective parents. That evidence no doubt enters the consideration of the case by the majority because of the mistaken assumption, mentioned above, that the modification in child support was applicable to both daughters, Christine and Stephanie.

The only genuine issue in the case on the question of the reduction in child support is whether the installment payment settlement of Christine's medical malpractice claim renders her economically emancipated and therefore entitles respondent to conclude his support payments. The majority answers the question in the affirmative, but cites no authority apart from § 452.340, RSMo. 1978 which applies, not to modification motions, but to the original judgment entered in the dissolution case.[2] Moreover, even assuming that statute applicable in the modification stage of an order for child support, the majority cites no case holding that compensation paid for permanent injury to a child may be regard-

ed as a resource which the child must use to provide its own support.

It is well settled law that a father is bound to support his minor children, if able to do so, even though they have property of their own. *Slaughter v. Slaughter,* 313 S.W.2d 193, 196 (Mo.App.1958). The only exception to this rule noted in the cases is the circumstance where, under a trust, will or agreement, a fund is created for the express purpose of maintenance and education of a child. *Slaughter v. Slaughter, supra,* at 196. Perhaps inadvertently, the majority opinion concedes that the monthly payments made to Christine are not designated for the purpose of deferring the expense of Christine's support when the opinion says " * * * there is no restriction upon the use of the child's funds received in the personal injury settlement." From this it must also follow that absent a designated purpose to be served by such income, the duty of respondent to continue supporting Christine is not affected by the receipt of the compensation recognizing Christine's permanent physical and mental disability and the liability of those responsible for her injuries.

The record shows that up to the date of these modification proceedings, appellant judiciously conserved the monthly payments made to Christine and withdrew nothing from the conservator's account for which she was answerable to the probate court. The only charge on the account during nearly two years was $62.40 paid in court costs. Thus, under appellant's management, the fund has remained intact as a resource for Christine's needs in future life. The effect of the modification order, however, is to require that the shortfall in support income previously paid by respondent father be met by depleting the funds set aside for Christine's future need.

If it be assumed, as it must from this record, that Christine has been supported

---

**2.** The applicable statute is § 452.370, RSMo. Supp.1984 which, unlike § 452.340, RSMo.1978, makes no mention of the child's resources as a factor to consider in modifying a previous judg-

ment. The factors for consideration under § 452.370, RSMo.Supp.1984 are the financial resources of *the parties.*

in the past by the payments under the existing decree, combined with the physical and monetary contribution from appellant as the custodial parent, then the amount by which respondent's payments are reduced must be supplied through withdrawals from Christine's account. Thus, the consequence of the modification order is to award respondent the equivalent of a monthly payment from his daughter. The enrichment of respondent at the expense of his own handicapped child is unconscionable and is the primary circumstance prompting this dissent.

Apart from the foregoing, however, the order reducing respondent's child support payment attributable to Christine cannot stand as a matter of law. The original support order merely provided that respondent pay $450.00 per month for the support of Stephanie and Christine. There was no allocation of the amount as between the two children and no specification that a particular sum be paid to support Christine. In the modification proceeding which is the subject of this appeal, there was no evidence as to any change in the monetary support needs of the other daughter, Stephanie, for the obvious reason that respondent sought no reduction in his obligation to pay child support on her account. The sole claim presented was that Christine's funds, obtained in settlement of the medical malpractice claim, rendered her financially independent and on this account, respondent should no longer be obligated to pay child support for her.

The law in Missouri has been well settled for more than twenty years as to the effect of emancipation of one child upon a father's duty to pay previously ordered lump sum child support for two or more children. Where the original decree fixes a single monthly sum payable for the benefit of two or more children, it is deemed to require payment of the entire sum until all the children are emancipated unless, based on all relevant facts considered at the date the modification is requested, the court determines a different sum is appropriate to the needs of the remaining children. *Gordon v. Ary*, 358 S.W.2d 81, 83 (Mo.App.1962).

The mere fact that one child has become emancipated does not automatically result in a reduction of the lump sum child support obligation. *Otten v. Otten*, 632 S.W.2d 45, 48 (Mo.App.1982).

In this case, there was no evidence presented at all regarding the current expenses incurred by appellant for support of the children and virtually no mention of the daughter Stephanie except in the context of respondent's claim for enlarged rights of visitation. Such proof was, of course, consistent with respondent's claim that because of Christine's economic emancipation, the lump sum child support should be reduced. As the cited cases hold, this contention was foredoomed to fail because emancipation of one child does not entitle the non-custodial parent to a reduction in lump sum child support payments on that ground alone. The decree which was entered reducing child support, taking into account no facts bearing on the needs of the children and the expenses for their care, was a product of sheer speculation and was not based on relevant and substantial evidence.

I would reverse the modification of the judgment for child support and reinstate the former judgment for payment of $450.00 per month lump sum child support.