David **LEWIS**, Appellant,

v.

**DEPARTMENT OF SOCIAL SERVICES, Division of Child Support Enforcement, Karen Cordell and State of Missouri, Respondents.**

**No. WD 58089.**

Missouri Court of Appeals,
Western District.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Oct. 30, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Dennis J. Campbell Owens, Kansas City, for appellant.

Lawrence D. Love, Independence, for respondents.

Before SPINDEN, P.J., BRECKENRIDGE and HOWARD, JJ.

BRECKENRIDGE, Judge.

David Lewis appeals the judgment of the circuit court affirming the decision of the Division of Child Support Enforcement which increased his child support obligation from $25 per week to $506 per month, retroactive to January 14, 1996. On appeal, Mr. Lewis first challenges the authority of the Division to modify a cir-

cuit court's child support order, claiming that the Division's exercise of power violates the constitutional separation of powers. Specifically, Mr. Lewis alleges that the administrative procedure employed "renders every final order of the courts unfinal, usurps the judiciary's responsibility to determine the law of the case and to review independently the acts of administrative agencies, and creates an imbalance between the executive and judiciary due to the [Division's] trump card power as to the amount of child support due." Next, Mr. Lewis argues that the Division erred in increasing the amount of child support payments because it failed to consider all relevant factors in determining the correct amount of child support in violation of Rule 88.01(a) and § 452.340.1, RSMo Cum. Supp.1997.[1] Specifically, Mr. Lewis alleges that the Division failed to attribute a "very significant amount of money" available to the child for her support, including a "special needs" trust that, according to Mr. Lewis, is not being used for special needs but for everyday expenses.

Because the Division failed to make specific findings regarding Jennifer's employment income, the circuit court's judgment is reversed. The cause is remanded to the circuit court with directions to remand the case to the Division to make the appropriate findings on this issue.

### Factual and Procedural Background

The marriage of David Lewis and Karen Lewis, now Cordell, was dissolved on or about August 14, 1978. In the decree of dissolution entered in the Circuit Court of Jackson County, Ms. Cordell was awarded custody of their child, Jennifer Kay Lewis, born December 28, 1976. Mr. Lewis was granted visitation rights and ordered to pay $25 per week in child support.

While Jennifer was a minor, she sustained a traumatic brain injury resulting from radiation therapy following resection of a brain tumor. On July 21, 1995, a medical malpractice settlement was reached in connection with that injury. As a result of this settlement, a trust was established to administer the proceeds of the settlement with Commerce Bank of Kansas City acting as trustee. At the time of the hearing in this action in April 1998, the corpus of the trust exceeded $80,000. Also at that time, monthly contributions of $3400 were being made to the trust and were to continue throughout Jennifer's lifetime. Monthly distributions from the trust to Jennifer averaged $320.67.

In addition to the trust distributions, Jennifer receives Supplemental Security Income (SSI) benefits. These benefits have ranged from approximately $337 to $482 per month, depending on the amount of income Jennifer earned through employment during the particular month. At the time of the hearing, Jennifer had been employed for five or six months at Southeast Enterprises doing piecework. Her income fluctuated from month to month, sometimes dropping below $100 per month, but her average income at the time of the hearing for the five or six months she worked at Southeast Enterprises was over $200 per month.

On December 21, 1995, the Division of Child Support Enforcement initiated an administrative child support modification proceeding on Ms. Cordell's behalf, seeking to increase Mr. Lewis's child support obligation to $516 per month from the $25 per week amount ordered in the August

---

1. All statutory references are to the Revised Statutes of Missouri 1997 Cumulative Supplement, unless otherwise noted.

14, 1978 decree of dissolution. The Division requested that the increase be effective January 15, 1996. In addition, the Division's motion proposed that Mr. Lewis pay at least $258 per month toward the arrearage that had accrued under the then-existing order.

In response to the Division's motion, Mr. Lewis requested an administrative hearing. In addition, Mr. Lewis filed a motion to modify the decree of dissolution in the Circuit Court of Jackson County. In this motion, Mr. Lewis sought to modify his visitation rights and his child support obligation. Mr. Lewis's action was consolidated with a pending action in the Probate Division of the Circuit Court of Jackson County, in which Ms. Cordell had requested that she be appointed as Jennifer's conservator and guardian. Pursuant to Mr. Lewis's request, the probate judge issued a stay in the administrative proceedings until all issues in the pending cases in the probate division had been adjudicated or resolved.

On January 7, 1997, the probate judge issued an order in which it made the following jurisdictional findings:

1. Sitting as a Family Court Division, this court has jurisdiction to consider a motion to modify child support for an adult incapacitated and disabled child.

2. Sitting as a Family Court Division, this court does not have jurisdiction to determine the custody of an adult incapacitated and disabled child nor to order visitation.

3. Sitting as a Probate Division, this court has exclusive jurisdiction to appoint a guardian and/or conservator for an adult incapacitated and disabled child.

4. Sitting as a Probate Division, this court does not have jurisdiction to order visitation.

Based upon its jurisdiction as a Family Court Division, the court considered whether the special needs trust should be considered for child support purposes. After discussing the nature of the trust involved and its relation to Jennifer's entitlement to SSI benefits, the court determined that the assets of the trust may not be considered in determining Mr. Lewis's child support obligation.

On January 9, 1998, Mr. Lewis voluntarily dismissed, without prejudice, his motion to modify that was pending in the circuit court. Following Mr. Lewis's dismissal of the action, the Division proceeded on its motion, which had been stayed by the probate judge. A hearing was held on April 29, 1998 to determine the issue of child support. The Division subsequently issued its decision in which it ordered that Mr. Lewis pay $506 per month for child support, retroactive to January 14, 1996. In doing so, the Division concluded that the corpus of the trust and income paid to Jennifer should not be considered in calculating the amount of Mr. Lewis's child support obligation.

Mr. Lewis sought judicial review of the Division's decision in the Circuit Court of Jackson County. The circuit court affirmed the Division's decision. Mr. Lewis filed this appeal. In his appeal, Mr. Lewis asserts error in the statutory procedure utilized to modify the child support awarded and in the calculation of the amount of child support to be paid. He does not challenge the determination that his child support obligation should continue past Jennifer's 18th birthday under § 452.340.4 since Jennifer is physically or mentally incapacitated from supporting herself, and is insolvent and unmarried.

### Standard of Review

On appeal, this court examines the decision of the agency, not the judg-

ment of the circuit court. *Davis v. Dept. of Soc. Servs., Div. of Child Support Enforcement,* 21 S.W.3d 140, 141 (Mo.App. 2000). In reviewing the factual findings, this court "may only determine whether the decision is supported by competent and substantial evidence upon the record as a whole, whether it is arbitrary and capricious or unreasonable, or whether the agency abused its discretion." *Id.* Where the decision of the agency involves an interpretation of the law and an application of the law to the facts, this court conducts an "independent review" of the Division's decision. *Id.*

### Separation of Powers

In his first point, Mr. Lewis argues that the Division erred in modifying the circuit court's child support order because this exercise of power by the Division violated the separation of powers provision of the Missouri Constitution. He argues that the administrative procedure by which the Division initiates a modification of a prior child support order "renders every final order of the courts unfinal, usurps the judiciary's responsibility to determine the law of the case and to review independently the acts of the administrative agencies, and creates an imbalance between the executive and judiciary due to the [Division's] trump card power as to the amount of child support due." Although Mr. Lewis recognizes that the Missouri Supreme Court upheld the constitutionality of § 454.496 in *Chastain v. Chastain,* 932 S.W.2d 396 (Mo. banc 1996), he argues that because "the court *must* modify a support order in subservience to [the Division's] decision[,]"citing § 452.370(8), the powers of the Division are "unconstitutionally infringing upon the judiciary's original jurisdiction."

Generally, a challenge to the constitutionality of a statute would divest this court of jurisdiction. Mo. Const. art. V, § 3; *Wright v. Dept. of Soc. Servs., Div. of Family Services,* 25 S.W.3d 525, 528 (Mo. App.2000). Yet "the mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction. The constitutional issue must be real and substantial; not merely colorable." *Wright,* 25 S.W.3d at 528 (quoting *Schumann v. Missouri Highway and Transp. Comm'n,* 912 S.W.2d 548, 551 (Mo.App.1995)). A challenge may be deemed merely colorable if a " 'preliminary inquiry discloses the contention is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit and a mere pretense. . . .' " *Id.* (quoting *Kansas City Star Co. v. Shields,* 771 S.W.2d 101, 103 (Mo. App.1989)). Because this court finds that Mr. Lewis's challenge to the constitutionality of § 454.496 is merely colorable, *see id.,* and that he has failed to properly raise his claim that other statutes were unconstitutional, *Laubinger v. Laubinger,* 5 S.W.3d 166, 173 (Mo.App.1999), this court has jurisdiction to decide this case.

First, this court considers Mr. Lewis's challenge to the administrative procedures set forth in § 454.496, which allow the Division to initiate modification proceedings. A similar challenge was raised and considered by the Missouri Supreme Court in *Chastain,* 932 S.W.2d at 398–99, and the Court upheld the constitutionality of § 454.496. The argument in *Chastain,* as here, was that § 454.496 "allows the Division to go beyond performing judicial functions to performing powers constitutionally reserved to the judiciary." *Id.* at 399. In addressing this challenge to the statute, the Supreme Court stated that the statute did not "permit the Division to review the trial court's order." *Id.* Instead, the Court noted, "[t]he Division considers a claim that circumstances have changed and that these new facts remove the current level of

child support from conformity with Rule 88.01. That is not judicial review." *Id.* Further, the Court noted that "the statute offers the Division no authority to enforce its judgment[,]" and "[s]ection 454.496.6 expressly states that any orders issued by the Division are not effective unless the orders are approved by the judicial department." *Id.* Thus, the Supreme Court found that § 454.496 "does not vest the Division with powers reserved exclusively by the constitution to the judicial department." *Id.* Because Mr. Lewis has provided no additional argument or reasoning to support his claim of unconstitutionality, the Supreme Court's decision in *Chastain* that § 454.496 is constitutional governs, and this court finds that his challenge to that statute is merely colorable.

In the argument portion of his brief, Mr. Lewis also challenges the administrative procedures of § 452.370(8), which states:

> Notwithstanding any provision of this section which requires a showing of substantial and continuing change in circumstances, in a IV D case filed pursuant to this section by the division of child support enforcement as provided in section 454.400, RSMo, the court shall modify a support order in accordance with the guidelines and criteria set forth in supreme court rule 88.01 and any regulations thereunder if the amount in the current order differs from the amount which would be ordered in accordance with such guidelines or regulations.

Subsection (8) of § 452.370 was added in 1997, after the Supreme Court's decision in *Chastain.* Thus, the Supreme Court in *Chastain* did not address the constitutionality of § 452.370(8). Mr. Lewis's challenge to § 452.370(8) alleges that since the Supreme Court's decision in *Chastain,* the courts have routinely "rubber stamped" the Division's decisions. Thus, he argues

that "[t]his practice circumvents judicial review . . . ," in violation of Article V, § 18 of the Missouri Constitution.

In the last paragraph of his argument, Mr. Lewis also "adopts the analysis of the Circuit Court of Johnson County, Missouri, in its judgment in *In re Marriage of Werths and Bradley,*" and attaches a copy of the trial court's judgment in that case. In the Johnson County judgment, the trial court found that §§ 452.370(8), 454.400.2(13), 454.490(1), 454.498 and 454.513 violated numerous provisions of the Missouri Constitution, including separation of powers (art. II, § 1), equal protection (art. I, § 2), due process (art. II, § 10), and judicial review of an agency's decision (art. V, § 18).

Mr. Lewis has not properly raised a challenge to the constitutionality of § 452.370(8) or any of the other statutes found unconstitutional in the *In re Marriage of Werths and Bradley* circuit court judgment. "To properly raise a constitutional issue, a party must: (1) raise it at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review." *Laubinger,* 5 S.W.3d at 173. The purpose of this rule is "to prevent surprise to the opposing party, and to permit the trial court an opportunity to fairly identify and rule on the issue." *State ex rel. Nixon v. McClure,* 969 S.W.2d 801, 803 (Mo.App. 1998) (quoting *Land Clearance for Redevelopment Auth. v. Kansas Univ. Endowment Ass'n,* 805 S.W.2d 173, 176 (Mo. banc 1991)). A constitutional question that is not properly raised is waived. *Laubinger,* 5 S.W.3d at 173.

In his petition for judicial review filed in the circuit court, Mr. Lewis stated:

[T]he administrative action taken under Section 454.496, R.S.Mo. (1994), violated the provisions of Article II, Section 1, and Article V, Sections 5 and 18 of the Constitution of the State of Missouri, depriving the Respondent, David Lewis, of a fair and impartial hearing and due process according to law in that such administrative review and modification of a prior judicial order is in violation of the separation of powers between the executive and judicial branches of the State of Missouri; and further infringes upon the exclusive jurisdiction of the Missouri Supreme Court to establish rules relating to practice, procedure and pleadings for all courts in administrative tribunals.

Although he filed a trial brief in support of his petition for judicial review, the trial brief did not mention his constitutional claim. He merely included a sentence in his trial brief indicating that any issues not addressed by the trial brief were reasserted as set forth in his petition for judicial review. From the language of his petition for review, it is clear that Mr. Lewis challenged the constitutionality of only § 454.496 in the trial court. He did not assert a claim that §§ 452.370(8), 454.400.2(13), 454.490(1), 454.498 and 454.513 were unconstitutional. His failure to raise the issue of the constitutionality of these statutes deprived the trial court of the opportunity to fairly identify and rule

on his claim. Because Mr. Lewis failed to assert the unconstitutionality of these statutes at the first available opportunity, he did not preserve his claim for review on appeal, and it is waived. *See Laubinger*, 5 S.W.3d at 173.

Mr. Lewis's first point is denied.

### Division Erred in Failing to Consider Additional Resources

In his second point, Mr. Lewis argues that the Division erred in increasing his child support payments from $25 per week to $506 per month, because the Division failed to consider all relevant factors in determining the appropriate amount of child support. Specifically, Mr. Lewis argues that the Division failed to consider the amount of money available to Jennifer through a "special needs" trust that he claims is not being used for special needs, but for everyday expenses. In addition, he argues that the Division should have considered Jennifer's SSI benefits and the income she received from her employment.[2]

"The amount of child support calculated on Form 14 is presumed correct, but may be rebutted if the trial court [or agency] determines that the amount calculated is unjust or inappropriate." *Stewart v. Stewart*, 988 S.W.2d 622, 626 (Mo.App.1999). *See also* § 452.340.9; Rule 88.01. Rule 88.01 states that "[w]hen

2. Mr. Lewis also argues, in the discussion portion of his brief, that the amount of child support ordered by the Division would result in a windfall to Ms. Cordell since she stipulated that her entire monthly household expenses for the whole family, Ms. Cordell, her husband, Jennifer and two children from her current marriage, totaled only $1840. Thus, he claims that the child support payments would be used by the Cordell household and not for the support of Jennifer. Mr. Lewis's point relied on did not, however, raise this as a basis for error. Under Rule 84.04(e), the

argument portion of the brief "shall be limited to those errors included in the 'Points Relied On.'" "Errors raised for the first time in the argument portion of the brief and that are not raised in the point relied on need not be considered by [this court]." *Morgan Publ'ns, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164, 177 n. 8 (Mo.App.2000) (quoting *Vallejo–Davilla v. Osco Drug, Inc.*, 872 S.W.2d 511, 515 (Mo.App.1994)). Thus, this court will not consider Mr. Lewis's assertion of error on this issue.

determining the correct amount of child support, a court or administrative agency shall consider all relevant factors, including all relevant statutory factors." One of those statutory factors is the "financial resources and needs of the child." Section 452.340.1(1). In deciding whether the presumed correct child support amount is unjust or inappropriate, a trial court is not free to completely disregard the child's income and assets. *See Hohenberg v. Hohenberg*, 703 S.W.2d 555, 558 (Mo.App. 1985). The same rule would apply to the Division.

## 1. Special Needs Trust

■ Mr. Lewis first argues that the Division erred in failing to find that the presumed correct child support amount should be rebutted because it is unjust and inappropriate in light of the income Jennifer receives from the special needs trust. Whether the income from a trust should be included in determining the appropriate amount of child support depends upon the type of trust involved and the intent of the settlor. *See Tidrow v. Dir., Mo. Div. of Family Servs.*, 688 S.W.2d 9, 12 (Mo.App. 1985) (noting that determination of whether trust assets constitute "available resources" for purposes of assessing eligibility for financial assistance from Division of Family Services requires a consideration of "the settlor's intent in creating the trust"). *See also Hohenberg*, 703 S.W.2d at 558 (finding that intent of trust supported consideration of asset in determining child support obligation).

Here, the trust in question is a special needs trust created as the result of a settlement of a medical malpractice claim.[3] Section 2.01.02 of the trust instrument indicates that the trust was created as "a special and/or emergency fund for the benefit of the Beneficiary [Jennifer] and not to displace or supplant public assistance or other sources of support which may otherwise be available to the Beneficiary." Distributions are made upon the sole discretion of the trustee to satisfy Jennifer's "special needs," that is, "the requisites for maintaining [Jennifer's] good health, safety and welfare[.]" In addition, the trust instrument states that the trust is a "spendthrift trust" and that "[n]o beneficiary ... shall have any right to ... sell, assign ... or otherwise dispose of or encumber all or any part of the trust estate, nor shall any part of the trust estate, including income, be liable for the debts or obligations of the Beneficiary ... or be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process." Thus, as was the trust in *Tidrow*, 688 S.W.2d at 11 (quoting *McNeal v. Bonnel*, 412 S.W.2d 167, 170 (Mo.1967)), this trust appears to be a " 'true spendthrift trust[.]' "

Judge Borron notes in his order of January 7, 1997, in which he discusses the nature and purpose of the trust, that this type of trust is established under 42 U.S.C. § 1396p(d)(4)(A) with the intent that it not be considered a "resource" in determining Jennifer's eligibility and entitlement to SSI benefits from the Social Security Administration.[4] One of the provisions of the

---

**3.** Mr. Lewis did not include a copy of the trust instrument in the legal file. The only portions of the trust available to this court are those contained in the January 7, 1997, order of Judge Borron, Judge of the Probate Division of the Jackson County Circuit Court. "It is the appellant's responsibility to prepare the record on appeal." Rule 81.12. "Matters

omitted from the record will not be presumed to be favorable to the appellant." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997).

**4.** Although the order of the probate judge is contained in the record and reference is made to the order, this court notes that the findings

trust, as required under 42 U.S.C. § 1396p(d)(4)(A), is that the Missouri Department of Social Services will be reimbursed for medical assistance paid on Jennifer's behalf from any funds remaining in the trust at the time of Jennifer's death.

Judge Borron discussed the nature of Jennifer's special needs trust and the legal consequences of its provisions in his order:

> The provisions of the Jennifer K. Lewis trust instrument ... comply with the requirements of federal law which permits [sic] the beneficiary of the trust to retain her governmental entitlements which, in this case, at least consist of her monthly SSI income of $454.00.

> "Special needs trusts are a type of discretionary trust. The terms of the trust restrict distributions of principal and income from the trust. The restrictions are designed to ensure that the corpus of the trust will not be treated as "available" property to a public benefit recipient. Restrictions on income attempt to ensure that distributions from the trust are not characterized as "countable income" to the recipients.

> "The strategy for restricting distributions for the trust is to prohibit any distribution of principal and income directly to the recipient for any purpose. The trustee will be permitted to make distributions (only in his/her discretion) from the trust to third parties for the purchase of items which are either exempt, (such as a home which is not counted under the program rules), *or to purchase items which can be anything other than food, clothing or shelter.* The restrictions are imposed because any property "available" to the beneficiary may be considered a resource, and any income paid to the beneficiary (which could be used for food, clothing or shelter) will be considered "countable" income to the beneficiary. The special needs trust beneficiary would, therefore, be rendered ineligible for his or her public benefits if any distributions of principal or income are made which are considered to be "available" to the beneficiary." Wiesner, "Planning for Disabled and Incapacitated Persons: Rules You Must Know." 248 PLI/Est 179, 202 (September, 1996). [Emphasis supplied]

Specifically, as to Jennifer's SSI entitlement, a special needs trust is not considered a resource " 'to an individual who is not legally empowered to revoke the trust and use the principal for his/her support and maintenance.' POMS SI 01120.200 B.1. Thus, the beneficiary must lack access to the trust principal and must not: a. control the amount or frequency of trust disbursements; or b. have the power to revoke the trust [or] use the funds for food, clothing, or shelter." Bohr, "the Income and Resource Rules of the SSI Program," 41 Soc.Sec. Rep.Ser. 755 (1992).

▮ Considering the provisions of the trust and the comments by authorities on the law applicable to special use trusts that are quoted in Judge Borron's order, it is evident that the trust is created to "supplement, rather than supplant, the benefits to which [Jennifer] would otherwise be

---

contained therein are not binding on the Division of Child Support Enforcement, the circuit court or this court. The collateral estoppel doctrine prohibits relitigation of an issue only if, *inter alia,* there has been a final judgment on the merits. *Fischer ex rel. Scarbor-* *ough v. Fischer,* 34 S.W.3d 263, 264 (Mo.App. 2000). Since Mr. Lewis voluntarily dismissed his motion for modification of visitation and child support prior to final adjudication, the order of the probate judge does not constitute a final judgment on the merits.

entitled." [5] *Tidrow,* 688 S.W.2d at 12. Because this trust is established for the special needs of Jennifer that may develop throughout her lifetime and Jennifer does not control distributions from the trust, this court does not believe that the Division abused its discretion by not finding that the special needs trust rendered the presumed correct child support unjust and inappropriate. To find that this trust is available for the ordinary support and maintenance of Jennifer's everyday expenses would be contrary to the intent and purpose of this trust.

The determination with respect to the special needs trust in this case is not contrary to prior decisions considering similar types of payments. In *Loetel v. Loetel,* 706 S.W.2d 235, 236 (Mo.App.1986), this court addressed whether the trial court should have considered money received by a child in settlement of a personal injury claim when computing the appropriate amount of child support.[6] There, this court affirmed the trial court's consideration of the funds received in the personal injury settlement in determining child support, thus reducing the non-custodial parent's support obligation, where there were no restrictions upon the use of the funds. *Id.* at 237. Here, however, there are significant restrictions placed upon the distributions from the trust, specifically, distributions may not be for food, clothing, or shelter, the type of expenses for which child support payments primarily exist. *See Weaks v. Weaks,* 821 S.W.2d 503, 507 (Mo. banc.1991) (stating that "[t]he purpose of child support is to provide for the needs of the children.").

Similarly, in *Hohenberg,* 703 S.W.2d at 558, the Eastern District determined that the trial court "misapplied the statute, the case law and the purpose behind the requirement of parental support[ ]" in awarding child support and in failing to consider trust income available for the support of the children. The court determined that "Father has by his actions provided for the support of his children[ ]" through the trusts established, prior to the dissolution of marriage, by himself and his parents. *Id.* The court noted that "[n]one of the trusts evidence any intention that income from the trust is not to be utilized for the maintenance, support and education of the children and all indicate that it shall or may be so used." *Id.*

■ Mr. Lewis argues that the trust income is being used for "ordinary daily expenses" rather than "special needs." Specifically, he points to the use of trust income· to pay for a trip to Branson, Worlds of Fun season passes, theater tickets, veterinary expenses and a car. Ms. Cordell testified at the hearing that the trip to Branson was taken by Jennifer and a woman working with Jennifer through a community integration program. The veterinary expenses were for the treatment and burial of Jennifer's dog. The vehicle purchased from the trust income is for Jennifer's benefit. Mr. Lewis has provided no authority that suggests that these disbursements are contrary to the intentions of the trust and this court finds that they are not contrary to the intent of this specific trust or a special needs trust, in general. While these expenses are not all directly generated by Jennifer's special needs, the trustee has the authority under

---

5.  Once again, since Mr. Lewis did not provide a complete copy of the trust instrument in the record, this court does not presume that separate sections of the trust provide otherwise. *See Wilkerson,* 943 S.W.2d at 649.

6.  In *Loetel,* an annuity rather than a trust was involved. 706 S.W.2d at 236.

the trust to authorize expenses that contribute to Jennifer's well being. These expenses are not everyday expenses generally contemplated by the presumed child support amount, but are, instead, extraordinary expenses authorized by the trustee to enhance Jennifer's life.

Finally, the Division had a rational basis for finding that the trust assets did not render the presumed correct child support amount unjust or inappropriate. The Division stated that "[a]s no extraordinary medical or other costs resulting from Jennifer's condition are a part of the support calculation in this matter, it would be inappropriate to include in that calculation resources specifically earmarked to help the Custodial Parent deal with her child's special circumstances." In doing so, the Division cited this court's analysis with respect to SSI benefits in *State ex rel. Dep't of Soc. Servs. Div. of Child Support Enforcement v. Kost*, 964 S.W.2d 528 (Mo.App. 1998). In holding that SSI benefits should not be included in determining the amount of the non-custodial parent's child support obligation, this court noted in *Kost* that "[t]he presumptive child support amount did not reflect the additional educational and medical needs required" for care of the child who, in that case, had Down's syndrome.[7] *Id.* at 531.

In *Kost*, this court held that "[d]eviation from the presumptive child support amount requires a finding by the trial court that the presumptive amount determined utilizing the Form 14 'is unjust or inappropriate.'" *Id.* at 530 (quoting Rule 88.01). In noting that Rule 88.01 allows for the consideration of the child's financial resources, this court stated that "[w]here a child has independent financial assets, the child's need for financial support from his

parents may be lessened and, hence, the contributing party's support obligation should accordingly be diminished." *Id.* This court determined that "SSI benefits, however, do not lessen the child's need for financial support from his parents". . . . *Id.* SSI benefits are, instead, "granted . . . to offset the additional financial burden incumbent with children who are physically or mentally disabled." *Id.* at 530–31. Thus, this court found that "SSI payments are, therefore, intended to supplement other income not substitute for it." *Id.* at 531.

■ This court's analysis in *Kost* is relevant to the income received from the trust, here, which like the SSI payments, is "intended to supplement other income not substitute for it." *Id.* The special needs trust established for Jennifer as a result of the medical malpractice claim and the monthly income received from the trust do not diminish Mr. Lewis's child support obligations. The trust represents additional income, used to defray the extraordinary expenses that are required in meeting Jennifer's special needs. *See id.* Those special needs were not considered when the presumptive amount, reflected in Form 14, was calculated. Thus, this court affirms the Division's determination that Jennifer's income from the special needs trust does not make the presumptive correct child support amount unjust or inappropriate.

## 2. SSI Benefits

Mr. Lewis next argues that the Division erred in failing to find that the presumed correct child support amount should be rebutted because it is unjust and inappropriate in light of the income Jennifer re-

---

**7.** The court in *Kost* noted that the directions and comments for use of Form 14 state specifically that SSI benefits are to be excluded in calculated the gross income of the parent. 964 S.W.2d at 531.

ceives from her SSI benefits. He asserts that the facts of this case are distinguishable from *Kost*, since the SSI benefits in this case are being used for daily living expenses. Mr. Lewis's argument is unpersuasive.

In *Weaks*, 821 S.W.2d at 506, the Missouri Supreme Court, in determining whether social security disability benefits paid due to the disability of the non-custodial parent should be included when determining a non-custodial parent's child support obligation, stated that "[t]he focus of the inquiry should be whether the purpose of child support is satisfied by the receipt of the social security benefits." The court noted that, in that case, "[t]he purpose of social security disability payments [was] to replace income lost due to the recipient's inability to work." *Id.*

While the Court in *Weaks* determined that social security benefits should be credited to satisfy the non-custodial parent's support obligation, that holding and the facts are distinguishable from this case. *See Kost*, 964 S.W.2d at 528, 530. *Weaks*, 821 S.W.2d at 504, involved social security benefits received by the custodial parent for the benefit of the parties' minor children as a result of the disability of the non-custodial parent. The Court noted that "[t]he issue whether the party charged with the support obligation is entitled to a credit ... for the support obligation depends on equitable considerations." *Id.* at 506. "The purpose of social security disability payments[,]" the Court recognized, is "to replace income lost due to the recipient's inability to work." *Id.* "[T]he benefits paid to the children are derived from funds 'earned' by the contributor." *Id.* While the Court recognized that in some instances "a recipient of disability benefits might have independent sources of income, commonly the disabled person is deprived of the

only means of support upon becoming disabled." *Id.* Thus, the Court determined that "it is inequitable to withhold a credit against the child support obligation[,]" where "[t]he parent charged with the support obligation may have no ability to satisfy that obligation other than through the governmental disability payments, which were effectively generated by contributions from wages while working." *Id.*

The rationale of *Weaks* does not apply to this case, as previously recognized by this court in *Kost*, 964 S.W.2d at 528, 530. The governmental benefits received by Jennifer are different than those involved in *Weaks*. Jennifer receives SSI benefits based upon her disability, not that of a parent. *See Kost*, 964 S.W.2d at 530. The SSI benefits Jennifer receives are intended to "offset the additional financial burden incumbent with children who are physically or mentally disabled[,]" and to defray a portion of the extraordinary expenses related to Jennifer's condition. *Id.* at 531. Unlike in *Weaks*, they are not intended to replace income that would have otherwise been received by a parent absent a disability. *See Kost*, 964 S.W.2d at 530–31. Jennifer's SSI benefits are intended as a supplement to, not a substitute for, other income. Thus, it would be inequitable to diminish Mr. Lewis's child support obligation based upon Jennifer's receipt of SSI benefits, especially since those extraordinary expenses were not added into the Division's calculations in Form 14. *Cf. Weaks*, 821 S.W.2d. at 505–07. Since the SSI benefits Jennifer receives are not related to Mr. Lewis's loss of income or his ability to pay child support, the rationale of *Weaks* does not apply.

■■■ Mr. Lewis's argument that the SSI benefits are not being used to satisfy additional expenses related to Jennifer's care, but are being used for everyday ex-

penses, does not persuade this court to find that the Division abused its discretion by not finding that the SSI benefits rendered the presumptive amount unjust or inappropriate. *Kost,* 964 S.W.2d at 530. *See also* Rule 88.01. The Division's ruling is consistent with the purpose of the payment of SSI benefits to a disabled child. To find that the existence of the trust and income from it make it unnecessary to use the SSI benefits for extraordinary expenses and, thus, SSI benefits should be considered in determining the assets of the child, would be contrary to the purpose and nature of the trust and SSI benefits. The trust is not intended to interfere with Jennifer's ability to receive SSI benefits, and the purpose of SSI benefits is to defray the costs associated with Jennifer's significant disabilities. Therefore, this court affirms the Division's determination that Jennifer's SSI benefits do not make the presumptive correct child support amount unjust or inappropriate. *See Kost,* 964 S.W.2d at 531.

### 3. Employment Income

Finally, Mr. Lewis argues that the Division erred in failing to find that the presumed correct child support amount should be rebutted in light of Jennifer's monthly income from employment. The parties presented extensive evidence at the hearing regarding Jennifer's employment income. In the Division's order, however, it did not make any findings of fact concerning this evidence.

■ The Division stated that its order was rendered pursuant to § 454.475. Section 454.475.3 requires that hearing officers "make specific findings regarding the liability and responsibility, if any, of the alleged responsible parent for the support of the dependent child[.]" Section 536.090, the statute that applies to "[e]very decision and order in a contested case," provides that findings of fact "shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order." The purpose of requiring the agency to make specific findings of fact explaining the basis for its decision is to enable this court "to conduct meaningful judicial review." *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n,* 24 S.W.3d 243, 244 (Mo.App.2000).

■ While the Division specifically discussed its reasons for finding that Jennifer's income from the special needs trust and SSI benefits did not rebut the presumed correct child support amount, the Division made no findings concerning Jennifer's employment income. As this court has already stated, the child's resources must be considered in determining whether the presumed correct child support amount should be rebutted as unjust or inappropriate. *See Hohenberg,* 703 S.W.2d at 558 (stating that, in determining the non-custodial parent's child support obligation, the trial court is "not free to disregard the income and assets of the children."). Without a finding addressing the evidence of Jennifer's employment income, this court is unable to discern whether the Division did, in fact, consider such evidence and if so, what its reason was for finding that the income did not render the presumed correct child support amount unjust or inappropriate. Thus, this court cannot determine whether the Division erred by not finding that Jennifer's employment income rebutted the presumed correct child support amount.

The judgment of the circuit court affirming the Division's order is reversed. Pursuant to § 454.496.6, the cause is remanded to the circuit court with directions to remand the cause to the Division so that the Division may enter proper findings of fact concerning Jennifer's employment in-

come and its effect, if any, on the presumed correct child support amount.

All concur.